**IN RE H.D.F., H.C., A.F.**

[197 N.C. App. 480 (2009)]

━━━━━━━━━━

IN RE: H.D.F., H.C., A.F.

No. COA09-53

(Filed 16 June 2009)

**1. Child Abuse and Neglect— findings of neglect—no objection—sufficiency**

Findings of fact to which respondent did not object supported the conclusion of neglect in a child neglect adjudication. Other findings were not dispositive.

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

2. **Child Abuse and Neglect— neglect by mother—custody to father—evidence sufficient**

There was sufficient competent evidence in a child neglect adjudication for the trial court to conclude that the father was a fit and proper person to have custody of a child. Although respondent-mother argued that more evidence was needed, she did not challenge the findings the court made or the competency of the evidence.

3. **Child Abuse and Neglect— custody to father—judicial notice of juvenile files**

There was substantial evidence in a child neglect adjudication from which the court could conclude without abusing its discretion that a child should be placed with her father, with legal custody to remain with DSS. Respondent did not object to the trial court taking judicial notice of the underlying juvenile case files.

4. **Appeal and Error— mootness—foster care in child's best interest—child returned to mother**

An appeal from a finding in a child neglect adjudication that it was in the best interest of a child to remain in foster care was moot where custody was subsequently granted to respondent-mother.

5. **Child Abuse and Neglect— reasonable efforts to prevent placement—functional equivalent**

Assuming that N.C.G.S. § 7B-507(a)(3) applies, ordering DSS to supervise respondent-mother's visitation and to aid in her substance abuse assessment and psychological evaluation is the functional equivalent of ordering DSS to make reasonable efforts to prevent the need for placement as required by the statute.

6. **Child Abuse and Neglect— child's father—counsel waived—no further notice of motions or hearing**

Child neglect adjudication and disposition orders were reversed and remanded where the child's father waived counsel; was not served with at least twenty documents; there was no indication that he had notice of the disposition hearing; and one of the reasons for not finding placement with the father appropriate was that he had not appeared before the court for several months.

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

Appeal by respondent-mother and father Gary F. from adjudication order entered on or about 2 July 2008 and disposition order entered on or about 17 September 2008 by Judge Joseph Moody Buckner in District Court, Orange County. Heard in the Court of Appeals 6 May 2009.

*Sofie W. Hosford, for appellant respondent-mother.*

*Peter Wood, for appellant respondent-father Gary F.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, for appellee respondent-father Thomas F.*

*Northern Blue, LLP, by Carol J. Holcomb, for petitioner-appellee.*

*Pamela Newell Williams, for appellee guardian ad litem.*

STROUD, Judge.

Respondent-mother has three children with three different fathers. The trial court adjudicated the children as neglected and ordered custody of one child to his father and custody of the other two children to remain with the Department of Social Services. From the adjudication and disposition orders, respondent-mother and respondent-father of one of the children in the custody of the Department of Social Services appeal. For the following reasons, we affirm in part, dismiss in part, and reverse and remand in part.

## I. Background

The trial court made the following pertinent findings in its 2 July 2008 adjudication order:

3. A Petition alleging Neglect of all three children[1] was filed on December 11, 2007. A Child Planning Conference (CPC) was held on December 18, 2007, where an agreement was reached that custody of the children would remain with Respondent

---

1. Pseudonyms will be used to protect the identity of the minor children. Discerning which child is being discussed and which child belongs to which father has been difficult as the children's names, beyond the first letter, have been marked out within the record to protect their identity and the briefs also differed in how they referred to the children. Adding to the confusion, two of the children's names start with the letter H. After a thorough review of the record we have determined that Harry is the son of Bradley C., Hannah is the daughter of Thomas F., and Amy is the daughter of Gary F. We will refer to the children by their pseudonyms when we are able to ascertain which child is at issue.

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

mother, subject to the provisions included in the Consent Order. Non-secure custody was ordered on January 15, 2008 and a non-secure custody hearing was set for January 17, 2008. At the non-secure custody hearing, by agreement of the parties non-secure custody was continued and, another CPC was held on January 22, 2008. No agreement was reached at the CPC . . . .

4. [Respondent-mother] and her [three] children . . . have been known to the Orange County Department of Social Services (OCDSS) since March 17, 2007, when the department received a referral alleging that [respondent-mother] abused benzodiazepines and opiates which impaired her ability to parent her children. OCDSS completed a family assessment and closed the case on April 17, 2007.

5. On May 1, 2007, OCDSS received a second referral alleging that [Harry] had been locked out of the house and could not get back in, even though his mother was at home. Upon being unable to gain entry into the home, [Harry] went to a neighbor's house and called his father, Bradley C., who immediately responded by going to the neighbors' home where [Harry] waited. Mr. C. knocked on the door in an attempt to get [respondent-mother] to respond. [Respondent-mother] did not respond. The Orange County Sheriff's Department was called for assistance. The evidence regarding the amount of time that [Harry] was locked out of the house and the amount of time it took to ultimately get [respondent-mother] to open the door is unclear. However, the court can conclude and does find that [Harry] was left unsupervised and locked out of his home for a substantial amount of time. This event occurred on a school day and [Harry] was not in school on this day. While [respondent-mother] claimed [Harry] was sick, Mr. C. observed that he was fine. A month before this event, [respondent-mother] had a car accident with [Amy] in the car, where she ran off the road and struck a tree. Again, OCDSS completed a family assessment and closed the case on June 19, 2007.

6. On July 31, 2007, OCDSS received another referral regarding a child of [respondent-mother]. This referral included information that [Amy] had not received proper medical care. Again, OCDSS completed a family assessment and closed the case on September 6, 2007.

7. On September 19, 2007, OCDSS received another referral indicating that [Harry] was left alone in the neighborhood without parental supervision; that he rode his bike without shoes or a helmet; that he would roam the neighborhood, sometimes taking things from the neighbors' garages and; and [sic] that he had entered the community clubhouse unattended. On October 19, 2007, the family was found to be in need of services and the case was referred to Child Protective Services for case management. Courtney McIntyre was the Social Worker assigned to the case.

8. After an initial meeting with [respondent-mother] in October, 2007, the Social Worker made numerous attempts to contact [respondent-mother] in order to establish a case plan, but [respondent-mother] failed and refused to respond to the Social Worker's attempts to contact her. Finally in late November, 2007, [respondent-mother] contacted the Social Worker's supervisor and was angry and hostile at OCDSS's continuing involvement and at the Social Worker's attempt to contact her. [Respondent-mother] agreed, however, to meet with the Social Worker on the following day. The next day, the Social Worker went to [respondent-mother's] home, but [respondent-mother] refused to let the Social Worker in the home. Rather, [respondent-mother] stood in the doorway, holding [Amy], while [Harry] watched. [Respondent-mother] screamed, yelled and cursed at the Social Worker for as long as the Worker was willing to stand there, which was about forty-five (45) minutes. During [respondent-mother's] tirade, [Harry] took [Amy] from his mother's arms, and took her to another room. When [respondent-mother] noticed that [Harry] had taken [Amy] to another room, she demanded that he bring her back and when he did, she placed [Amy] at the base of the stairs and proceeded to scream and yell obscenities at the Social Worker. Neither [Harry] nor [Amy] seemed phased [sic] by [respondent-mother's] rage. No case plan was established during this encounter.

9. In December, 2007, OCDSS filed a Juvenile Petition alleging neglect. A Consent Order was signed at a Child Planning Conference on December 18, 2007, but custody of the children remained with [respondent-mother], subject to conditions listed in the order.

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

10. After the December 18, 2007 Child Planning Conference, OCDSS continued to receive reports from the community that [respondent-mother] was abusing drugs to the extent that she was impaired and unable to adequately parent the children; and that the children were not attending school regularly. [Respondent-mother] continued to be uncooperative with the Social Worker assigned to her case.

11. While providing case management services to the [respondent-mother] and her children, the Social Worker learned and the court finds:

a) Between August, 2007 and November 14, 2007, [Hannah] had ten (10) unexcused absences and five (5) excused absences from C.W. Stanford Middle School.

b) [Respondent-mother] failed and refused to respond to the many notices sent to her from the school regarding [Hannah's] absences.

c) Because of [Hannah's] chronic absences, a notice was sent to the District Attorney.

d) At the time [Hannah] was removed from [respondent-mother's] custody, she had an academic grade average of a "D".

e) During [Harry's] year . . . he missed twenty-nine (29) days . . . and had been tardy to school twenty-seven (27) times. . . . .

12. Upon requesting and receiving non-secure custody and placement authority of the children, [Amy] was placed in foster care, [Harry] was placed with his father and [Hannah] was placed with a family friend.

13. After non-secure custody was obtained, the Social Worker learned and the court so finds that [Amy] had not obtained routine immunizations, . . . had a yeast infection, mild eczema and cradle cap. [Amy's] vaginal area was caked in baby powder when the foster mother went to change her diaper.

14. [Respondent-mother] has an opiate dependency. In August, 2007, she began to be treated for opiate dependence by Dr.

Nathan Strahl, a psychiatrist who maintains opiate dependency with a drug called Suboxone. . . .

. . . .

24. [Respondent-mother's] dependency upon opiates and her current use of Suboxone, an opiod replacement, impairs her ability to parent. [Respondent-mother] does not provide appropriate care and supervision to the children which has created an environment injurious to the health and welfare of her children.

Based upon these and other findings the trial court concluded that the three children were neglected "in that they are juveniles who do not receive proper care or supervision from their parents; and they are juveniles who live in an environment injurious to their welfare."

On or about 17 September 2008, the trial court filed a disposition order which adopted all the findings of fact from the adjudication order. The disposition order further found:

12) Based upon the court reports and other documents submitted by the Orange County Department of Social Services, the Guardian ad Litem and Respondents, the court also finds specifically:

a) Brad C., [Harry's] father has no clinical diagnosis and is mentally sound.

b) Thomas F., [Hannah's] father has addressed his drug and/or alcohol addiction and is in early full remission.

c) Based on his psychological evaluation, [Harry] has not had his physical and emotional needs met by his mother on a consistent basis and will benefit from short-term therapy.

d) [Respondent-mother's] promises to [Harry] regarding trips to Disney World upon his return to her are damaging and confusing to [Harry].

e) Since being placed with his father, [Harry] has appeared well cared for, relaxed and happy. He has received tutoring in math and reading over the summer in order to prepare him for the . . . school year.

f) [Hannah] is in therapy with Dr. April Harris-Britt. Thomas F. and his current wife have attended two therapy sessions

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

with [Hannah] and are willing to attend more. [Hannah] has begun to establish a relationship with her father and her step-mother which is positive and which [Hannah] is happy about.

. . . .

h) [Respondent-mother] often has minimal interaction with [Harry] and [Hannah] during visitations and focuses on [Amy].

i) [Respondent-mother] has been observed acting inappropriately during visitations in that she will often turn her back to the supervisor and mouth things to [one child] so that the supervisor cannot hear or see. [Respondent-mother] has also been observed talking to [Harry] and [Hannah] about how [Amy] is not properly cared for in her foster home, and [respondent-mother] does not come to the visits with anything for the children to do. [Respondent-mother] does not engage the children in activities during her visits.

. . . .

m) To date, [respondent-mother] has failed to adequately address the underlying issues that led to the findings of neglect in the Adjudication Order.

13) The conditions which led to the removal of the children from the home of the Respondent Mother still exist and that the return of the children to the home of the Respondent Mother would be contrary to the welfare of the said minor children.

14) Gary F., has waived counsel and did not appear before this Court. His child, [Amy], has been adjudicated neglected, and he has failed to appear and advocate that he is or should be the appropriate placement for the child, and has made no appearance before this Court in several months. Mr. F.['s] failure to appear and participate in the decisions about where his child shall be placed is evidence to this Court that he is not a proper placement for [Amy] at this time. Neither OCDSS nor the Guardian are recommending that he be a placement for [Amy].

15) Brad C. is a fit and proper person to have custody of [Harry] and it is in [Harry's] best interest that custody be awarded to Brad C.

16) Thomas F. and his wife Jennie provide a fit and proper home for the placement of [Hannah] and it is in [Hannah's] best interest that she remain in OCDSS custody but be placed in their home for a trial placement. This Court is not awarding Thomas F. custody of [Hannah] at this time because it is early in his recovery and remission from alcohol and/or drug addiction. If Thomas F. continues to address his addiction and provide proper care and supervision to [Hannah], the Court may consider awarding him custody in the future.

17) It is in [Amy's] best interest that she remain in foster care, pending further orders of the court. Returning to the custody of Respondent mother or Respondent father Gary F. is not in [Amy's] best interest and is contrary to the child's interest, health and welfare.

Based upon these and other findings the trial court awarded custody of Harry to Brad C. and custody and placement authority of Hannah and Amy to OCDSS. From the adjudication and disposition orders, respondent-mother and Gary F, respondent-father of Amy, appeal.

## II. Respondent-mother's Arguments

Respondent-mother brings forth several issues on appeal. We address each below.

## A. Findings of Fact Addressing Neglect and Best Interests

[1] We address respondent-mother's first and last arguments in conjunction. Respondent-mother contends numerous findings of fact within the adjudication and disposition orders were unsupported by the evidence, including findings of fact 5, 8, 10, 11(f), 13, 14, 18-20, and 24 of the adjudication order and findings of fact 11, 12(c-d), 12(g-i), 12(k), 13, 16, and 17 of the disposition order. Furthermore, respondent-mother contends that "the trial court erred in concluding that these children were neglected in the absence of clear and convincing evidence of such neglect."

Findings of fact 5, 8, 10, 13, 14, 19, and 24 of the adjudication order and 11, 12(c-d), 12 (g-i), 12(k) and 13 in the disposition order were all supported by documents and reports submitted to the court to which respondent-mother failed to object. As respondent-mother did not object to the evidence, she has waived any challenges to the admission of the evidence on appeal. *See* N.C.R. App. P. 10(b)(1); *see*

**IN RE H.D.F., H.C., A.F.**

[197 N.C. App. 480 (2009)]

*also In re W.L.M.*, 181 N.C. App. 518, 522, 640 S.E.2d 439, 442 (2007) (citation omitted) ("At trial, respondent did not object to the trial court's taking judicial notice of the underlying juvenile case files . . . and, therefore, has waived appellate review of this issue."). As respondent-mother failed to preserve any challenges to these findings for the purposes of appeal, they are now binding. *See Pascoe v. Pascoe*, 183 N.C. App. 648, 650, 645 S.E.2d 156, 157 (2007) (citation and quotation marks omitted) ("Findings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal.")

> A proper review of a trial court's finding of . . . neglect entails a determination of (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact. In a non-jury . . . neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings. Our review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact.

*In re Pittman*, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (citations and quotation marks omitted), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003).

> A neglected juvenile is one
>
> who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; *or* who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2007).

Here, the facts establish, *inter alia*, that: (1) Harry was locked outside of his home and unsupervised for a substantial amount of time, even though his mother was inside the home. Harry required the assistance of a neighbor, his father, and the Orange County Sheriff's Department in order to regain access to his home; (2) Respondent-mother screamed obscenities at a social worker in front of her children for approximately 45 minutes; (3) Hannah frequently missed school; (4) Respondent-mother "refused to respond" to several

notices regarding her child's absences from school; (5) Harry also frequently missed school; (6) Amy "had not obtained routine immunizations . . . had a yeast infection, mild eczema and cradle cap. [Amy's] vaginal area was caked in baby powder when the foster mother went to change her diaper[;]" and (7) respondent-mother has an opiate dependency that "impairs her ability to parent." These findings of fact support the conclusion that the children were neglected pursuant to N.C. Gen. Stat. § 7B-101(15). *See* N.C. Gen. Stat. § 7B-101(15).

As to the remaining challenged findings of fact in the adjudication order, 11(f), 18 and 20 regarding respondent-mother's demeanor, veracity, and drug use, we need not address them as even assuming they are unsupported by the evidence, they are not dispositive of any determination by the trial court. *See Black Horse Run Ppty. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 86, 362 S.E.2d 619, 622 (1987) (citations omitted) ("Where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions."), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988).

**[2]** The remaining findings challenged by respondent-mother in the disposition order relate to the best interests of the children and we address these challenges below.

Respondent-mother contends the trial court erred in its findings regarding the best interests of each of the children. At the disposition stage, "facts found by the trial court are binding absent a showing of an abuse of discretion." *Pittman* at 766, 561 S.E.2d at 567 (citation and quotation marks omitted).

> The court, after making findings of fact . . . may make any disposition authorized by G.S. 7B-903, including the authority to place the juvenile in the custody of either parent or any relative found by the court to be suitable and found by the court to be in the best interests of the juvenile. The court may enter an order continuing the placement under review or providing for a different placement as is deemed to be in the best interests of the juvenile.

N.C. Gen. Stat. § 7B-906(d) (2007).

> Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

the trial court . . . . Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.

*In Re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984).

Respondent contends that "the trial court erred in finding and concluding at disposition that Brad C. was a fit and proper person to have custody of [Harry] and that it was in [Harry's] best interest that custody be awarded to his father. This conclusion was unsupported by the competent findings of fact." (Original in all caps.) We first note that respondent-mother does not direct our attention to any evidence that Brad C. is not "a fit and proper person to have custody of [Harry] and that it was in [Harry]'s best interest that custody be awarded to his father." Instead, respondent-mother essentially contends that more evidence was needed; in other words, the evidence presented was not enough to conclude that Brad C. is "a fit and proper person to have custody of [Harry] and that it was in [Harry]'s best interest that custody be awarded to his·father."

Respondent-mother did not challenge the trial court's finding that "Brad C., [Harry's] father has no clinical diagnosis and is mentally sound." She also did not challenge the finding that "[s]ince being placed with his father, [Harry] has appeared well cared for, relaxed and happy. He has received tutoring in math and reading over the summer in order to prepare him for the . . . school year." *Pascoe* at 650, 645 S.E.2d at 157 (citation and quotation marks omitted) ("Findings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal."). As respondent-mother has not challenged the competency of the evidence presented, we conclude that there was *enough* competent evidence, including the report of the *guardian ad litem*, the report of DSS, Brad C.'s psychological evaluation, and Brad C.'s testimony, upon which the trial court could conclude without abusing its discretion that "Brad C. is a fit and proper person to have custody of [Harry] and it is in [Harry's] best interest that custody be awarded to Brad C."

[3] Respondent-mother also challenges finding of fact 16 that "Thomas F. and his wife Jennie provide a fit and proper home for the placement of [Hannah] and it is in [Hannah]'s best interest that she remain in OCDSS custody but be placed in their home for a trial placement." Respondent-mother contends "[t]his finding is based upon no evidence beyond the 'reports' considered by the court." As we have already established, "[a]t trial, respondent did not object to

the trial court's taking judicial notice of the underlying juvenile case files . . . and, therefore, has waived appellate review of this issue.". *In re W.L.M.* at 522, 640 S.E.2d at 442. We conclude there was substantial evidence in the reports from which the trial court could conclude without abusing its discretion that Hannah should be placed with her father, with legal custody to remain with DSS.

**[4]** As to Amy, respondent-mother challenges finding of fact 17: "It is in [Amy's] best interest that she remain in foster care, pending further orders of the court. Returning to the custody of Respondent mother. or Respondent father Gary F. is not in [Amy's] best interest and is contrary to the child's interest, health and welfare." We take judicial notice that on 8 May 2009 the trial court entered a custody order which granted custody of Amy to respondent mother and Gary F. Respondent-mother's brief noted that as Amy is in her physical custody, this argument is moot. *See Pearson v. Martin,* 319 N.C. 449, 451, 355 S.E.2d 496, 497 (1987) (citation and ellipses omitted) ("Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law."). Respondent mother's appeal on this issue is therefore dismissed.

Therefore, we conclude that there was clear and convincing evidence to support the findings of fact and that the findings of fact support the conclusions of law, including that the children were neglected; it was in the best interests of Harry to be in the legal custody of his father; and it was in the best interests of Hannah to be in the legal of custody of DSS, with placement to be with her father. Any contentions as to Amy's placement are moot. These arguments are overruled.

B. Reasonable Efforts

**[5]** Respondent-mother also contends that

[t]he decretal portion of the Disposition Order . . . failed to address reunification of [respondent-mother] with either [Harry] or [Hannah]. This constituted reversible error because the court was required to either find that reasonable efforts should or should not be made to prevent or eliminate the need for further placement with regard to those children.

N.C. Gen. Stat. § 7B-507 provides,

IN RE H.D.F., H.C., A.F.

[197 N.C. App. 480 (2009)]

(a) An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued non-secure custody, a dispositional order, or a review order:

. . . .

(3) Shall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined or determines under subsection (b) of this section that such efforts are not required or shall cease[.]

N.C. Gen. Stat. § 7B-507 (a)(3) (2007).

N.C. Gen. Stat. § 7B-101 defines reasonable efforts as

[t]he diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.

N.C. Gen. Stat. § 7B-101(18) (2007).

Here, the trial court ordered

6) Respondent mother is granted supervised visitation with [Harry] and [Hannah] every other Sunday from 1 p.m. until 5 p.m. beginning August 24, 2008 and with [Amy] every Wednesday from 4:30 p.m. until 5:30 p.m.

7) Visitation with Respondent mother and [Harry] and [Hannah] shall be in the home of the Respondent mother.

. . . .

9) Respondent fathers, Brad C. and Thomas F. shall provide transportation for [Harry] and [Hannah] to visit with Respondent mother.

10) The visits shall be supervised by Anna Lankford Kennedy or another visitation supervisor approved by the Orange County

Department of Social Services. The burden to arrange supervision for the visits is the responsibility of Respondent mother. Likewise, Respondent mother shall pay the supervisor her fees for providing supervision for the visitation.

. . . .

13) Should Respondent mother take advantage of the visitation as set forth above, this Court authorizes additional visitation to occur at the discretion and recommendation of the treatment team.

14) Respondent mother shall complete a full substance abuse assessment. Respondent mother shall follow the treatment recommendations resulting from the evaluation, if any. Respondent mother shall complete a full psychological evaluation and follow the resulting treatment recommendations. The evaluators shall be selected in consultation with and upon the agreement of DSS and the GAL.

Assuming *arguendo* that N.C. Gen. Stat. § 7B-507 (a)(3) even applies to Harry and Hannah, as Harry is in the custody of a parent, his father, and Hannah has been placed with her father, we note that though the trial court does not explicitly state that DSS must "make reasonable efforts to prevent or eliminate the need for placement of the juvenile[s,]" N.C. Gen. Stat. § 7B-507(a)(3), the trial court does order "[t]he diligent use of preventive or reunification services by a department of social services" pursuant to N.C. Gen. Stat. § 7B-101(18) as the trial court set out a visitation schedule for respondent-mother and ordered DSS to supervise the visits. N.C. Gen. Stat. § 7B-101(18). We conclude that the trial court complied with N.C. Gen. Stat. § 7B-507(a)(3) because ordering DSS to supervise respondent-mother's visitation and to aid in her substance abuse assessment and psychological evaluation is the functional equivalent of ordering DSS to "make reasonable efforts" with respondent-mother with regard to Harry and Hannah. N.C. Gen. Stat. § 7B-507(a)(3). This argument is overruled.

### IV. Respondent-father Gary F.

[6] Gary F. first contends "[t]he trial court committed prejudicial error by conducting the adjudication and disposition hearings when Gary F. was not represented by counsel." Gary F. argues that although he signed a consent order waiving counsel, the trial court was re-

**IN RE H.D.F., H.C., A.F.**

[197 N.C. App. 480 (2009)]

quired to inquire into whether the waiver was knowing and voluntary. We disagree.

"In cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen. Stat. § 7B-602(a) (2007). The 23 January 2008 consent order in which Gary F. waived counsel reads,

> Prior to accepting the stipulated agreement of the parties, the undersigned judge reviewed with the parties the above stipulations and agreements via the undersigned Facilitator. The Facilitator made careful inquiry of them with regards to the voluntary nature of the agreement and their understanding thereof. The Facilitator explained to the parties the legal effect of their stipulations and agreements and determined that the parties understood the legal effect and terms of the agreement and stipulations. The parties acknowledged their voluntary execution of the agreements and stipulation stated that the terms accurately reflected their agreement, and agreed of their own free will to abide by them.

The consent order itself therefore establishes that the trial court reviewed the order with the parties via the Facilitator and that each party, including Gary F., understood the terms of the order and voluntarily entered into the order. One of the terms of the order was Gary F.'s waiver of counsel. Gary F.'s waiver of counsel was therefore knowing, voluntary, and valid.

However, from the record it appears that after Gary F.'s counsel withdrew, the other parties forgot that he was still a party to the case. After Gary F. waived his counsel, numerous documents were filed by the various parties, and based upon the record, at least twenty of these documents were not served upon Gary F, including several motions, an affidavit, and notice of a deposition.

Rule 5 of the North Carolina Rules of Civil Procedure requires,

> [E]very paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment and similar paper *shall* be served upon each of the parties . . . .

N.C. Gen. Stat. § 1A-1, Rule 5(a) (emphasis added). "This Court has held the General Assembly's use of the word 'shall' establishes a mandate, and failure to comply with the statutory mandate is reversible error." *In re D.A.*, 169 N.C. App. 245, 247-48, 609 S.E.2d 471, 472 (2005) (citation omitted).

The certificates of service in the record contain detailed listings of all parties and counsel served, and Gary F. is conspicuously absent from many of them. Gary F. was essentially left out of the case for months and did not have a chance to participate after his counsel withdrew. We are particularly concerned about the failure to serve Gary F. because one of the reasons that the trial court found Gary F. not to be an appropriate placement for Amy was that

> he has failed to appear and advocate that he is or should be the appropriate placement for the child, and has made no appearance before this Court in several months. Mr. F.['s] failure to appear and participate in the decisions about where his child shall be placed is evidence to this Court that he is not a proper placement for [Amy] at this time.

The "several months" during which Gary F. was not appearing coincides with the time period during which Gary F. was not being served with most of the filed documents. In fact, the record does not contain any indication that Gary F. even had notice of the disposition hearing. We admonish counsel for the parties to pay special attention to making sure that *all* parties are served with *all* documents required to be served, especially in a case such as this, with multiple children and parents. We also urge the trial courts to take special care to check the certificates of service to make sure that all required parties have been served, particularly before making a finding that the party will not be considered as a placement for a child due to his failure to appear. Therefore, we reverse the adjudication order and the disposition order as it applies to Gary F. as he was not served with multiple documents regarding his daughter's case on numerous occasions and did not have a meaningful opportunity to participate in the case after his appointed counsel's withdrawal. As we are reversing the adjudication and disposition orders as applied to Gary F., we need not address his other contentions.

## IV. Conclusion

We reverse the adjudication and disposition order as it applies to Gary F. and remand for a new hearing regarding whether Amy was neglected as to Gary F. We dismiss as moot the appeal of respondent-

**IN RE J.B.**

[197 N.C. App. 497 (2009)]

mother as to Amy in the disposition order and as to all other issues, we affirm.

**AFFIRMED IN PART, DISMISSED IN PART, REVERSED AND REMANDED IN PART.**

Judges ELMORE and ERVIN concur.

———————————

IN RE: J.B.