An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1473

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

IN THE MATTER OF:

J.R.[1]                                    Mecklenburg County
                                           No. 10 JA 739


Appeal by Respondent-Father from Order entered 1 October 2013 by Judge Regan A. Miller in Mecklenburg County District Court. Heard in the Court of Appeals 19 May 2014.

*Senior Associate Attorney Twyla Hollingsworth-Richardson, for Petitioner Mecklenburg County Department of Social Services, Youth and Family Services, and Administrative Office of the Courts, by Appellate Counsel Tawanda Foster, for Guardian ad Litem (joint brief).*

*Michael E. Casterline for Respondent-Father.*

STEPHENS, Judge.


*Procedural History and Factual Background*

On 20 December 2010, Mecklenburg County Department of Social Services, Youth and Family Services ("DSS") filed a juvenile petition alleging that "Jade" and her two half-siblings

---

[1] Initials and a pseudonym are used to protect the identity of the juvenile and for ease of reading.

were neglected and dependent based on the actions of their mother. Respondent-Father had not been identified as Jade's father at that time. By order entered 1 March 2011, the children were adjudicated neglected and dependent.

Respondent-Father's paternity was established in February 2011, and the juvenile court placed Jade in his custody. Placement ended in November of 2011 when Respondent-Father was arrested and jailed for driving while impaired ("DWI"). On 19 September 2012, the juvenile court conducted a permanency planning review hearing. The following month, on 18 October 2012, the juvenile court awarded guardianship of Jade to her maternal aunt and granted visitation to Respondent-Father. Respondent-Father appealed the juvenile court's order.

In an opinion filed 4 June 2013, this Court reversed the juvenile court's permanency planning review and guardianship order. Citing "clear" case law, we held that the juvenile court erred by failing to determine that Respondent-Father was unfit or acted inconsistently with his status as a parent *before* the court applied a best interests analysis to establish guardianship of Jade with her aunt. *In re J.R.*, __ N.C. App. __, 745 S.E.2d 375 (2013) (unpublished opinion), *available at* 2013 WL 2432251 [hereinafter *J.R.*]. "[E]ven when a juvenile has

previously been adjudicated dependent and neglected," we stated, the juvenile court has to specifically find that a natural parent is unfit or that his conduct is inconsistent with a parent's constitutionally protected status in order to award permanent custody of the child to a nonparent over the objections of a natural parent. *Id.* at *5. Because the juvenile court failed to do so, we reversed its order. *Id.* at *6.

The juvenile court conducted another permanency planning review hearing on 18 July 2013. Following the hearing, on 1 October 2013, the court filed its written order, concluding that Respondent-Father acted inconsistently with his constitutionally protected status as Jade's parent. Accordingly, the juvenile court ordered Jade to be placed in the guardianship of her aunt pursuant to N.C. Gen. Stat. § 7B-600 (2013). Respondent-Father appeals that order.

*Discussion*

On appeal, Respondent-Father argues that the juvenile court (1) exceeded its authority by concluding that he "acted inconsistently with his parental role," (2) made factual findings leading to this conclusion were not supported by competent evidence, and (3) erred by finding that efforts to

reunite Jade with Respondent-Father would be inconsistent with her need for a permanent home. We affirm.

*I. The Juvenile Court's Authority*

In his first argument on appeal, Respondent-Father contends that the juvenile court exceeded its authority at the permanency planning review hearing and violated his right to due process of law under N.C. Gen. Stat. § 7B-802 by "mak[ing] what is effectively an adjudicatory determination at a review hearing." Citing the typically different standards of proof in an adjudicatory hearing and a permanency planning review hearing, Respondent-Father contends the juvenile court "stripped [him] of his constitutionally[ ]protected status [by deciding this issue in a permanency planning review hearing] without any of the procedural safeguards set forth in Article 8 of the Juvenile Code [for an adjudicatory hearing]." We disagree.

DSS and the Guardian *ad Litem* assert in their joint brief that Respondent-Father waived this argument by failing to object at the hearing. Respondent-Father admits his failure to object, but contends that the issue is nonetheless preserved for appellate review because the juvenile court acted contrary to the statutory mandate of section 7B-802. This argument is without merit.

The standard of proof for an adjudicatory hearing is clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2013). In this case, the trial court states at the beginning of its permanency planning review hearing and guardianship order that its findings of fact are based on "clear, cogent, and convincing evidence." This is the proper standard of proof for determining whether a parent has acted in accordance with his or her constitutionally protected status as a parent. *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003) ("Moreover, the trial court's determination [in a custody hearing] that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence.") (citation omitted).

Whether Respondent-Father waived his argument or not, the trial court's order plainly states that it applied the same evidentiary standard in the permanency planning review hearing as is required for an adjudicatory hearing and for the process of determining whether a parent's conduct is inconsistent with his or her status as a parent. Therefore, the trial court's conclusion that Respondent-Father acted inconsistently with his status as a father could not have "stripped him" of his constitutional rights, as he argues, for failure to use the

proper evidentiary standard. The trial court used the same standard of proof in the permanency planning review hearing that it would have used in an adjudicatory hearing or in a custody hearing. Moreover, it is uncontested that Respondent-Father was given notice of the hearing and an opportunity to be heard and, in light of this Court's opinion in his prior appeal, the issues to be determined at that hearing were clear. Accordingly, Respondent-Father's first argument is overruled.

*II. The Trial Court's Findings of Fact*

"Appellate review of a permanency planning order is limited to [determining] whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004) (citation omitted). "If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal." *Id.* (citation omitted). Because the juvenile court properly employed a "clear and convincing" evidentiary standard in this case, the evidence presented at the hearing must be admissible under that standard in order to be considered "competent." *Cf. In re McMillon*, 143 N.C. App. 402, 411, 546 S.E.2d 169, 175 (2001) (referring to hearsay testimony as incompetent evidence for purposes of determining whether the trial court's findings of fact are based on competent evidence).

On appeal, Respondent-Father contends that the factual determinations supporting the juvenile court's conclusion that he acted inconsistently with his status as a parent are not based on competent evidence. Respondent-Father also contests some of the court's findings of fact by arguing that certain evidence suggests a contrary finding. In making this argument, Respondent-Father specifically challenges the juvenile court's findings of fact surrounding child support, visitation, and his actions before February 2011. He goes on to argue that, without these findings, the remaining facts do not support a determination that he acted inconsistently with his status as a parent. We are unpersuaded.

*A. Child Support*

First, Respondent-Father challenges the following findings of fact on the issue of child support:

> 2. The primary problems that led to [Jade] coming to [DSS]'s custody and remaining in custody were: The mother's substance abuse issues, the lack of knowledge of [Jade's] father's identity until 8 February 2011, [Respondent-Father's] relapse and arrest for DWI, his unstable housing, and his irregular employment. Prior to February 2011, Respondent[-F]ather had not provided any emotional or financial support for [Jade] and was not providing a safe and stable environment for her. At the time she came into the custody of [DSS], [Respondent-Father] was suffering from substance abuse

issues and was not protecting [Jade] from the substance abuse issues of the mother. After paternity was established . . . , [Jade] was placed with her father by [the juvenile court], but that placement ended in November 2011 due to his arrest for DWI and being placed in jail. [Respondent-Father] was again not able to establish a safe and stable home for [Jade].

. . . .

13. [Respondent-Father] has been on notice that [Jade] might be his child for almost two and one[-]half years. He has known he is her father since 8 February 2011. During that time, he has paid no child support for [Jade].

14. [Respondent-Father] has had the ability and means to pay support. He has had lucrative employment for at least the last three and one[-]half months, driving a forklift truck for two different companies. He had unstable employment before these two recent jobs, but always made enough money to support himself and maintain his housing.

. . . .

16. [Jade's aunt] filed a child support action in an attempt to have child support be ordered from [Respondent-Father]. [The maternal aunt] and [Respondent-Father] attended a child support court hearing in June 2013. That hearing was continued, but [Respondent-Father] still has paid no support for [Jade] to [DSS] or [Jade's maternal aunt] during the twenty[-]six months he has been aware she is his child and she has been placed with [her maternal aunt].

Respondent-Father does not contend that these findings are not based on competent evidence. Rather, he contends that they "do not support [the juvenile court's] conclusion that [he was] an unfit parent" because (1) evidence was presented at the hearing that he also took care of Jade when she visited with him and (2) he was not *required* to pay child support. This argument is misplaced.

A trial court's finding of fact is not invalid merely because there is evidence to support a contrary finding. *Cf. In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) ("In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings."). As we noted above, a finding of fact in a permanency planning review hearing is invalid only if it is not based on "any" competent evidence. *In re J.C.S.*, 164 N.C. App. at 106, 595 S.E.2d at 161. Respondent-Father does not challenge these findings as not supported by competent evidence. Therefore, they are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on

appeal."). The fact that Respondent-Father was not *required* to pay child support does not relieve him of the parental obligation to support his child. *See Boyd v. Boyd*, 81 N.C. App. 71, 77, 343 S.E.2d 581, 585 (1986) ("Support for minor children is an obligation shared by both parents according to their relative abilities to provide support and the reasonable needs and estate of the child."); *see also Price v. Howard*, 346 N.C. 68, 84, 484 S.E.2d 528, 537 (1997) (noting that "support of a child is ordinarily a parental obligation[, which] . . . should accompany the right to custody in cases such as this one"). Accordingly, Respondent-Father's argument as it relates to child support is overruled.

*B. Visitation*

Second, Respondent-Father challenges the following findings of fact on the issue of visitation:

> 7. As part of its [o]rder of 19 September 2012, the [c]ourt granted [Respondent-Father] unsupervised overnight weekend visitation with [Jade]. [Respondent-Father] was to pick up [Jade] at her day care center on Friday afternoon and return her to the day care center on Monday morning.
>
> 8. The visits did not take place as ordered. Sometimes, [Respondent-Father] would not pick up [Jade] on Friday and she would spend the weekend with [her maternal aunt]. On other occasions, [Respondent-Father] would end the visit early and return [Jade] to

[her maternal aunt] before Monday morning.

9. [Respondent-Father] told [the aunt] he often had to work on weekends[,] but did not seek to add additional time with the child during the week. He also told her he faced financial hardships. He once asked [the aunt] if he could add [Jade] to his [f]ood [s]tamp allotment although she was not primarily living in his home.

10. [Respondent-Father] missed at least 8 scheduled weekend visits in their entirety. There should have been 21 or 22 weekend visits. In addition to the missed visits, others were shortened by [Respondent-Father].

. . . .

15. He missed some of his weekend visits because he had to work[,] but did not seek additional time with [Jade].

. . . .

22. [Jade] cannot be placed with [Respondent-Father] at this time or within the next six months. [Respondent-Father] has been unable to provide care and supervision for [Jade] for two days out of fourteen on a consistent basis under the current visitation schedule. He has missed nearly forty percent of his scheduled visits with [Jade] entirely and cut other visits short.

Respondent-Father argues that these findings are "largely unsupported" by the evidence and "do not support [the trial court's] conclusion that [his] conduct has been inconsistent with being a good parent." Specifically, Respondent-Father

argues that the court's findings of fact are erroneous in the following ways: (1) Finding 7 incorrectly suggests that visitation was to occur every week, not every other week; (2) findings 10 and 22 incorrectly suggest that Respondent-Father missed a larger percentage of visits than he may have actually missed because the aunt said she was "unsure" about the visitation schedule; (3) finding 8 is suspect because of the aunt's lack of certainty; (4) findings 9 and 15, regarding Respondent-Father's missed visits, are wholly unsupported by the evidence at the hearing. We disagree.

Finding 7 makes no statement about whether visitation was to occur every week or every other week. Rather, it clarifies the period of days that visitation was set to occur doing those weeks. This is based on the aunt's testimony that Respondent-Father was to pick Jade up from her daycare on Friday and drop her off at the daycare on Monday. Therefore, it is based on competent evidence.

Findings 10 and 22 are based on the aunt's testimony that Respondent-Father missed approximately eight scheduled visits. The visitation order indicates that visitation was scheduled to occur every other week. As Respondent-Father admits in his brief, this provided for 21 or 22 scheduled visits. As a result,

the aunt's testimony could be interpreted to mean that Respondent-Father missed 36% or "nearly forty percent of scheduled visits with Jade." This is competent evidence to support findings 10 and 22. The fact that the evidence could be interpreted to support a contrary finding is of no consequence. *See In re J.C.S.*, 164 N.C. App. at 106, 595 S.E.2d at 161.

Finding 8 is based on the following testimony by the aunt:

> Q    Okay. Has [Respondent-Father] exercised his visitation rights?
>
> A    We started out doing that, then, no, it stopped. He would call me, tell me that he couldn't get her, then I would pick her up. He would call me on a Sunday and tell me that he has to be at work so early, he don't have time to take her to the daycare, can I get her, so I would go pick her up.

This is competent evidence to support finding 8. The fact that the aunt was unsure about the visitation schedule goes to the weight of her testimony, not whether her testimony is competent. *See Harrington v. Rice*, 245 N.C. 640, 643, 97 S.E.2d 239, 241 (1957) ("The credibility of the witnesses and the weight of the evidence were for determination by the court below in discharging its duty to find facts.").

Findings 9 and 15 are supported by the testimony quoted above. They are also supported by the fact that no evidence was presented at the hearing that Respondent-Father sought

additional time with Jade. This is competent evidence to support those findings. Therefore, Defendant's argument is overruled as it relates to visitation.

*C. Respondent-Father's Conduct Before February 2011*

Third, Respondent-Father challenges findings of fact 2 and 23 regarding his conduct before February 2011. Finding of fact 2 is quoted above and finding of fact 23 reads as follows:

> 23.    [Respondent-Father] has acted inconsistently with his constitutionally protected status as [Jade's] father. At the time she came into the custody of [DSS] he was not providing for the emotional and financial support of the child and had not acknowledged paternity. He has paid no child support. He has failed to take advantage of his court-ordered visitation opportunities.

Respondent-Father contends these findings are not supported by the evidence because he did not know that he was Jade's father until February 2011, after Jade entered DSS custody. We need not resolve this question here.

"Where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions." *In re H.D.F.*, 197 N.C. App. 480, 490, 677 S.E.2d 877, 883-84 (2009). Here, the juvenile court's relevant findings of fact regarding

visitation and child support are supported by competent evidence. These findings support the juvenile court's conclusion that Respondent-Father acted inconsistently with his constitutionally protected status as a parent. Therefore, even assuming the juvenile court's findings regarding his actions prior to February 2011 are erroneous, its conclusion that Respondent-Father acted inconsistently with his role as a parent is supported by the other findings of fact, which are in turn supported by competent evidence. Accordingly, Defendant's second argument is overruled.

### III. The Juvenile Court's Finding Regarding the Cessation of Reunification

In his final argument, Respondent-Father contends that the juvenile court erred in finding efforts to reunite Jade with either parent would be inconsistent with her need for a permanent home in a reasonable period of time because this finding essentially and invalidly ceased reunification efforts under N.C. Gen. Stat. § 7B-507(b)(1). This is incorrect.

As we noted in *In re Padgett*,

> [t]he clear language of section 7B-507 . . . states [that] . . . a finding [regarding the cessation of reunification efforts] must be made in any order "placing or continuing the placement of a juvenile in the custody or placement responsibility of DSS." N.C. [Gen. Stat.] § 7B-507(a) [(2013)]. In this case,

> the [o]rder on [r]eview did not place or continue the placement of the children with DSS, nor did it continue placement responsibility with DSS. To the contrary, the order granted custody to the children's grandparents and specifically released DSS "from all duties over the minor children." Thus, section 7B-507 was not applicable, and the trial court did not err in awarding custody of the children to their grandparents in the [o]rder on [r]eview.

156 N.C. App. 644, 649, 577 S.E.2d 337, 341 (2003).

In this case, as in *In re Padgett*, the permanency planning review hearing and guardianship order did not place or continue placement of Jade with DSS or continue placement responsibility with DSS. Rather, the order placed Jade in her aunt's guardianship and specifically released DSS. Accordingly, section 7B-507 is not applicable, and the juvenile court did not err by placing Jade in her aunt's guardianship. Defendant's argument is overruled.

AFFIRMED.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).