IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-162

No. COA21-289

Filed 15 March 2022

Onslow County, Nos. 20 JA 83 & 84

IN THE MATTER OF: K.W. & M.W.

Appeal by respondent-father from order entered 15 February 2021 by Judge Sarah C. Seaton in Onslow County District Court. Heard in the Court of Appeals 19 October 2021.

*Leslie Rawls for appellant respondent-father.*

*Richard Penley for appellee Onslow County Department of Social Services.*

*Daniel Heyman for Guardian ad Litem.*

GORE, Judge.

¶ 1 Respondent-father appeals from an Order on Adjudication and Disposition adjudicating his children Kenneth and Malcolm[1] neglected and dependent and placing the juveniles in the custody of the Onslow County Department of Social Services ("DSS"). On appeal, respondent-father argues the trial court erred in adjudicating Kenneth and Malcolm neglected and dependent. After careful review, we vacate the order of the trial court and remand for entry of a new order.

I.    Background

---

[1] Pseudonyms are utilized to protect the identity of the juveniles.

¶ 2        On or about 15 May 2020, DSS initiated an assessment of the family. The family consists of respondent-father, the juveniles' mother, Zeke,[2] Kenneth, and Malcolm. At the time of the initial assessment, DSS's concerns included mental health, improper care and supervision, injurious environment, parenting skills, and housing instability.

¶ 3        At the time DSS initiated their assessment, the family had been evicted from their apartment and was living with another family. On 27 May 2020, the family was asked to leave the home where they were residing with friends. The family began residing in hotels at that time. Over the course of DSS's involvement, the family lived in three different hotels. On the morning of 4 June 2020, the family had insufficient funds to pay for the hotel. On 4 June 2020, Kajsa Williams (a social worker who worked with the family) went to talk to the hotel clerk with the hopes of getting an extension on the family's check-out. By the time Ms. Williams returned, the mother had received her monthly Supplemental Security Income ("SSI") check as well as child support from Zeke's father. The family was able to pay the hotel fee on 4 June 2020 and at no point had to move out of the hotel.

---

[2] Zeke is Kenneth and Malcolm's half-brother. Zeke was also adjudicated neglected and dependent in the same proceeding as Kenneth and Malcolm. However, because Zeke is not respondent-father's child and respondent-father is the only appellant in this case, Zeke's adjudication and disposition is not at issue on appeal.

¶ 4    The juvenile's mother is unemployed. She also admitted to Ms. Williams that in 2019 she was diagnosed with bipolar disorder and schizophrenia. During DSS's involvement with the family the mother was not in treatment for her mental health disorders nor was she taking any medication. Additionally, the mother occasionally used cocaine. However, the mother claimed she had a community support person to help with her anxiety and getting the mother back in school, and to assist the mother in becoming more independent with housing. The mother also saw a counselor regarding her use of illegal drugs.

¶ 5    On at least two occasions the mother kicked Zeke out of their home. Zeke is autistic and at times would become physical with his mother. At these times the mother was unable to calm Zeke down and would become overwhelmed and tell Zeke he could leave if he wanted to.

¶ 6    Respondent-father suffered from post-traumatic stress disorder. However, respondent-father maintained full-time employment and was the primary caregiver for the juveniles. Respondent-father occasionally uses marijuana, but never in front of the juveniles. Ms. Williams primarily observed respondent-father supervising the juveniles and reported his parenting was always appropriate.

¶ 7    On a few occasions respondent-father and mother engaged in verbal altercations with raised voices. Several of these altercations occurred in front of the juveniles. On at least one occasion the social workers had to separate respondent-

father and the mother. Additionally, law enforcement had been called due to the parents' verbal altercations in the past.

¶ 8        DSS filed a Juvenile Petition on 5 June 2020, alleging the juveniles neglected and dependent. An adjudication hearing was held on 18 and 20 November 2020. At the adjudication hearing Ms. Williams, Zeke's community services worker Kim McKay, and the mother testified. The trial court held a disposition hearing immediately following the adjudication hearing. At the disposition hearing, the trial court received testimony from Kiasia Anderson (another social worker who worked on the case) and Dichelot Pierre (a DSS supervisor). On 15 February 2021, the trial court entered an Order on Adjudication and Disposition adjudicating the juveniles neglected and dependent and placing Kenneth and Malcolm in DSS custody. On 5 March 2021, respondent-father entered a written Notice of Appeal to the Supreme Court of North Carolina. Respondent-father amended his Notice of Appeal on 9 March 2021 to give notice of appeal to this Court.

## II.    Analysis

¶ 9        On appeal, respondent-father argues that certain findings of fact made by the trial court are not supported by competent evidence and that the findings of fact do not support the conclusion of law that Kenneth and Malcolm were neglected and dependent.

### A. Standard of Review

¶ 10    "The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007), *aff'd in part modified in part*, 362 N.C. 446, 665 S.E.2d 54 (2008) (cleaned up). "The clear and convincing standard is greater than the preponderance of the evidence standard required in most civil cases." *In re K.L.*, 272 N.C. App. 30, 36, 845 S.E.2d 182, 188-89 (2020). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *In re T.H.T.*, 185 N.C. App. at 343, 648 S.E.2d at 523. "Unchallenged findings of fact are deemed supported by the evidence and are binding on appeal." *In re K.H.*, 2022-NCCOA-3, ¶ 13.

¶ 11    Whether a child is neglected or dependent is a conclusion of law and we review a trial court's conclusions of law *de novo*. *In re Ellis*, 135 N.C. App. 338, 340, 520 S.E.2d 118, 120 (1999); *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2008). Under a *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re A.K.D.*, 227 N.C. App. 58, 60, 745 S.E.2d 7, 8 (2013) (citation omitted).

B. Findings of Fact

¶ 12    Respondent-father argues that the trial court erred in adjudicating Kenneth and Malcolm neglected and dependent because several of the trial court's findings of fact are not supported by clear and convincing evidence. Respondent-father challenges findings of fact 28, 30, and 38.

¶ 13    These challenged findings (or pertinent portions thereof) state:

> 28. . . . The respondent mother received her SSI payment two days later and by June 4, 2020 had no more money to pay for a hotel for the family.
>
> . . .
>
> 30. . . . That the respondent mother's admitted drug habit and mental health issues adversely impacted all three juveniles, creating an environment injurious to their welfare. That the respondent mother improperly supervised the juveniles. That this improper supervision and injurious environment has been shown by the juvenile [Zeke] being kicked out of the family's residence.
>
> . . .
>
> 38. That at the time of the removal of the juveniles, the respondents were unable to provide for the juveniles' care and supervision and lacked an appropriate alternative childcare arrangement.

¶ 14    As to finding of fact 28, respondent-father argues that the evidence shows they were able to pay for the hotel room on 4 June 2020 and remained living in the hotel for the rest of June, even after the children were removed. A review of the testimony of Ms. Williams shows that on 4 June 2020 the family suggested they did not have

funds to stay in the hotel, Ms. Williams went to ask the hotel clerk to extend the family's check-out and when she returned respondent-mother had received that month's SSI payment which was used to pay for the hotel. Ms. Williams also testified that the respondent-parents remained in the hotel for at least another 30 days beyond 5 June 2020. There was no testimony or evidence offered that showed the respondent-parents ever missed a payment for the hotel or moved out of the hotel. Accordingly, we hold that this finding of fact is not supported by clear and convincing evidence insomuch as the family ran out of money to pay for hotels on 4 June 2020, and we are not bound by that portion of the finding.

¶ 15        Respondent-father next challenges finding of fact 30 by arguing the evidence shows Kenneth and Malcolm were well-cared for and safe while living with their family. At adjudication, Ms. McKay testified that she did not have concerns for either parent's mental health. In contrast, Ms. Williams testified that she had concerns for the parent's mental health and that the mother told Ms. Williams that she had previously been diagnosed with bipolar disorder and schizophrenia. Ms. Williams further testified that respondent-father told her that the mother uses cocaine from "time to time," but never in front of the children. Ms. Williams also testified that, prior to the petition being filed, DSS did not ask either parent to submit to a drug screen. The mother testified that she was diagnosed with bipolar disorder and schizophrenia and was not in treatment when her children were in her care, but that

she had a community support person to help with her issues. The mother initially invoked her Fifth Amendment rights when asked about her drug use, then she testified that she was seeing a counselor for her drug "issues" and that the counselor "was more focused on [her] drug habit than the mental stage . . . ." There was no testimony or evidence as to the frequency of the mother's drug use, aside from her use of the words "issues" and "habit."

¶ 16        While the evidence presents concerns for the mother's mental health, the trial court's findings of fact did not address any impact her mental health diagnoses or drug use had on the juveniles Malcolm and Kenneth. Although there was no direct evidence the mother used drugs in the presence of the juveniles or while she was supervising the juveniles, there was evidence that her behavior adversely affected the children. In addition, since Mother invoked her 5th Amendment right not to answer questions regarding her use of illegal drugs, the trial court could infer that her answers would have been damaging to her claims that she did not have any real problem with drugs. Although mother had a right to assert her constitutional right not to answer, this proceeding is a civil case and she is not entitled to use the privilege against self-incrimination as both a "shield and a sword." *See Qurneh v. Colie*, 122 N.C. App. 553, 558, 471 S.E.2d 433, 436 (1996) The privilege against self-incrimination is intended to be a shield and not a sword. *Christenson v. Christenson*, 281 Minn. 507, 162 N.W.2d 194, 200 (1968). Here, the mother attempted to assert the

privilege as both a shield and a sword. In an initial custody hearing, it is presumed that it is in the best interest of the child to be in the custody of the natural parent if the natural parent is fit and has not neglected the welfare of the child. *Petersen v. Rogers*, 337 N.C. 397, 403–404, 445 S.E.2d 901, 905 (1994). Respondents sought to take advantage of this presumption by introducing evidence of their fitness. *See Wilson v. Wilson*, 269 N.C. 676, 677, 153 S.E.2d 349, 351 (1967) (holding that in order to be entitled to this presumption, the natural parent must make a showing that he or she is fit). However, when DSS sought to rebut this presumption by questioning the mother regarding her illegal drug activity, the mother asserted her fifth amendment privilege. To allow the mother to take advantage of this presumption while curtailing the opposing party's ability to prove her unfit would not promote the interest and welfare of the child. *See* N.C. Gen. Stat. § 50–13.2(a)(1995).

¶ 17     The trial court's findings of fact do not include sufficient detail for this court to review its finding that Kenneth and Malcolm were affected by improper supervision or that an injurious environment had been created for Kenneth and Malcolm. The primary evidence offered to support the finding that the juveniles were in an injurious environment was that the mother had kicked Zeke out of the residence. However, there was no evidence either Kenneth or Malcolm had been kicked out or that the incident involving Zeke had any impact on his younger brothers.

¶ 18        As to finding of fact 38, respondent-father argues that the evidence shows the juveniles were properly cared for. Ms. Williams testified that after the family was first evicted from their apartment they stayed with a friend and then lived in three different hotels. Father contends there was no testimony the family was homeless at any time, but the evidence does show extreme instability in the family's housing. Father also notes that Ms. Williams testified that in June she saw Malcolm and Kenneth (age two and four) dressed only in diapers. She also testified that once she had to buy diapers for the children and once bought the kids a meal from McDonalds. When asked about how much food the family had in their hotel room, Ms. Williams testified, "There was some food. . . .  there was a small amount. There was little microwavable meals." Ms. Williams testified that she observed respondent-father primarily caring for the children and she had no concerns for respondent-father's parenting. There was testimony that the parents had tried to locate alternative childcare and were unable to. At the disposition phase of the hearing, Ms. Anderson testified that she had no concerns for respondent-father's parenting skills and that respondent-father's presence would negate any concerns with respondent-mother's parenting. There was also testimony the parents had verbal disagreements, and on one occasion the parents had to be separated. But Father contends the testimony also showed that the respondent-parents did not yell at each other or become physical during these disagreements. Father also contends there was no evidence either

parent was ever unable to purchase necessities for the juveniles or that the juveniles ever went homeless, hungry, or did not have proper clothing. Although Father highlights the evidence favorable to his position, he overlooks the other unchallenged findings as well as the adverse evidence and inferences which could be drawn from that evidence.

¶ 19        The unchallenged findings of fact show that DSS has a history with the mother and respondent-father for mental health, parenting skills, substance use, housing instability, domestic violence, and improper care and supervision. The Mother needed both substance abuse and mental health treatment but was not receiving either substance abuse or mental health treatment at the time of the petition. Respondent-father and mother had previously engaged in verbal altercations, at times in front of the juvenile children, and on at least one occasion law enforcement was called during the incident. Respondent-father and mother were previously kicked out of a home they were residing in with friends. These unchallenged findings of fact, when viewed in the aggregate, are sufficient for a trial court to base a determination of abuse and neglect. *See In re B.H.*, 2021-NCCOA-710,¶¶ 22, 38-48 (affirming a trial court order adjudicating a juvenile neglected where the findings of fact included domestic violence and untreated mental health by a parent); *see also In re H.D.F.*, 197 N.C. App. 480, 489-92, 677 S.E.2d 877, 883-85 (2009) (concluding that findings of fact

which included a finding of a history of substance abuse by respondent-mother supported an adjudication that the juvenile is neglected).

¶ 20 Father is correct that the trial court's findings primarily address Zeke, and not Malcolm and Kenneth, and thus do not sufficiently address the rationale for finding that the parents were unable to provide for the care and supervision of Father's children, but this Court cannot make findings. Only the trial court may assess the credibility and weight of the evidence.

> We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial. A trial judge "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). "[I]ssues of witness credibility are to be resolved by the trial judge. It is clear beyond the need for multiple citation that the trial judge, sitting without a jury, has discretion as finder of fact with respect to the weight and credibility that attaches to the evidence." *Smithwick v. Frame*, 62 N.C.App. 387, 392, 303 S.E.2d 217, 221 (1983). "The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal." *Coble v. Coble*, 300 N.C. 708, 712–13, 268 S.E.2d 185, 189 (1980).

*Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994)

C. Conclusion of Law

¶ 21    Respondent-father's next argument is that the findings of fact do not support the conclusion of law that Kenneth and Malcolm were neglected and dependent. Under North Carolina law, a neglected juvenile is:

> Any juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker does not provide care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile . . . has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2020). A dependent juvenile is:

> A juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-101(9).

¶ 22    Respondent-father asserts neither the evidence nor the findings of fact in this case show harm or a substantial risk of harm to Kenneth and Malcolm or that the juveniles' parents are unable to provide for their care and supervision. Respondent-father contends that at best the evidence supported the adjudication of Kenneth and

Malcolm's half-brother Zeke, who is not subject to this appeal. While the neglect of one juvenile may be considered in the adjudication of another juvenile, the fact that one juvenile is neglected is insufficient to support the adjudication of another without evidence directly pertaining to the second juvenile. *See In re J.C.B.*, 233 N.C. App. 641, 643-44, 757 S.E.2d 487, 489-90, *disc. rev. denied*, 367 N.C. 524, 762 S.E.2d 213 (2014).

¶ 23        But since we have already determined that some of the trial court's findings of fact were not supported by the evidence and that we must remand for additional findings of fact, we need not further address Father's argument regarding the conclusion of law.

¶ 24        The trial court made virtually no findings pertaining directly to Kenneth and Malcolm. The trial court's findings overwhelmingly focused on Zeke and the condition of the juveniles' parents. Parental behavior constituting "neglect" must be "either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile[s]." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). Additionally, while housing instability may contribute to a juvenile's status as neglected, housing instability cannot support a conclusion of neglect without evidence that the housing instability impeded the care and supervision of the juveniles or exposed the juveniles to an injurious environment. *In*

*re Adcock*, 69 N.C. App. 222, 226, 316 S.E.2d 347, 349 (1984); *In re J.R.*, 243 N.C. App. 309, 315, 778 S.E.2d 441, 445 (2015).

¶ 25    Further, DSS concedes that the trial court made no specific findings of fact addressing the impact on or risk of neglect regarding Kenneth and Malcolm nor do the findings connect Zeke's neglect to any potential neglect of his two siblings. Therefore, DSS argues the matter should be remanded to the trial court. We agree.

## III.    Conclusion

¶ 26    For the foregoing reasons, we vacate remand  the trial court's adjudication of Kenneth and Malcolm as neglected and dependent for further findings of fact consistent with this opinion.

VACATED AND REMANDED.

Chief Judge STROUD and Judge INMAN concur.