IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-803

Filed: 4 August 2020

Duplin County, No. 18 JA 46

IN THE MATTER OF: E.P.-L.M.,

A Juvenile.

Appeal by Respondent-Mother from orders entered 15 January 2019, 22 April 2019, and 15 May 2019, by Judge Shelly Holt in Duplin County District Court. Heard in the Court of Appeals 27 May 2020.

*Elizabeth Myrick Boone for Petitioner-Appellee Duplin County Department of Social Services.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky L. Brammer, for Respondent-Appellant Mother.*

*Matthew D. Wunsche for guardian ad litem.*

INMAN, Judge.

This appeal arises from a trial court's adjudication of a child as abused, neglected, and dependent, termination of the juvenile proceeding, and modification of visitation in a civil custody proceeding. Because the adjudication order is supported by findings of fact not challenged on appeal, the adjudication will not be disturbed, and it is not necessary for this Court to review other findings of fact. Because the trial court entered an order complying with statutory requirements to terminate juvenile jurisdiction and determine visitation in a civil custody proceeding,

we will affirm the transfer of jurisdiction and the trial court's finding that supervised visitation is in the best interest of the child. But because the trial court failed to make a necessary finding regarding a parent's ability to pay costs associated with supervised visitation, we vacate the visitation provisions and remand for further findings on that issue.

Respondent-Mother ("Mother") appeals. After careful review, we affirm in part the orders of the trial court but vacate the provisions of the trial court's orders allowing supervised visitation by Mother and remand for necessary findings on her ability to pay associated costs.

## I. Factual and Procedural Background

Ellen was born in December 2014 in Onslow County to parents Mother and Father. Four months later, Mother and Father separated due, in part, to drug use by Mother, and Father moved to Georgia. Father initiated a civil custody proceeding (the "Civil Custody Case") in Onslow County District Court. The trial court granted Mother and Father joint physical custody of Ellen and instructed Mother to allow Father routine visitation with Ellen. Ellen continued to live primarily with Mother in the home of Ellen's maternal grandmother ("Grandmother") in Onslow County.

Beginning in 2016, the Onslow Department of Social Services ("DSS") provided continuing in-home services to Mother. DSS also received reports concerning Ellen since her birth, including claims of substance abuse by Mother, concerns that the

family lacked resources to properly care for Ellen, and repeated allegations that Ellen had been sexually abused by Father. In September 2016, Grandmother reported finding a small object inside Ellen's vagina, removed the object at home, then took Ellen to the hospital for examination. Grandmother stated she feared Father had sexually abused Ellen, but the hospital found no evidence of sexual trauma. In June 2017, Mother and Grandmother again reported that Father had sexually abused Ellen. DSS, law enforcement in North Carolina and Georgia, and a child advocacy center investigated the reports and found no evidence of sexual abuse. Mother and Grandmother thereafter continued to report sexual abuse allegations against Father to DSS.

On 5 December 2017, the trial court entered an order in the Civil Custody Case instructing DSS to investigate Mother's allegations of sexual abuse by Father. DSS attempted to temporarily place Ellen with paternal relatives during the investigation and family evaluation, but Mother expressed fears that other members of Father's family had also sexually abused Ellen. Mother continually refused to allow placement of Ellen with any paternal relatives. Due to the "high conflict and severity of the allegations" in the case, the trial court appointed an independent expert, forensic psychologist Dr. Amy James, to evaluate Ellen.

Dr. James concluded that it was "improbable" that Ellen had been sexually abused; that it was "highly probable" Ellen had been subjected to circumstances that

could cause emotional abuse; that it was "possible" that subjecting Ellen to multiple invasive medical procedures as a result of sexual abuse allegations had a negative impact on Ellen's well-being; and that she had "concerns regarding [Mother's] current ability to parent."

On 26 January 2018, DSS[1] filed a petition alleging that Ellen was abused, neglected, and dependent. The petition alleged that Mother had a substance abuse history, that Mother and Ellen lived with Grandmother, and that Mother and Grandmother had submitted multiple unsubstantiated sexual abuse allegations against Father. Later that same day, the trial court removed Ellen from Mother's residence and placed Ellen in non-secure custody pending an outcome in the case.

The trial court held a hearing on DSS's petition on 19 December 2018, with all parties present and represented by counsel. DSS, the GAL, and Father tendered stipulations to the trial court concerning Mother's alleged conduct giving rise to the petition; Mother, however, did not sign the stipulations. DSS and the GAL both argued that the stipulations could be used to establish Mother's conduct even absent her agreement to them. When the stipulations were first proffered, the trial court directly asked DSS, "is it your contention . . . that if I accept these stipulated facts, that shifts the burden now to Mom?" DSS replied, "I wouldn't say it shifts the burden,

---

[1] The Onslow County Department of Social Services filed the initial petition in this case, but the trial court transferred the matter to Duplin County in August 2018. We use "DSS" to refer to both counties' departments interchangeably for simplicity and ease of reading.

but those stipulations become evidence, [Mother is] allowed to present [her] own evidence." Father's counsel offered that, "It's still the—DSS (inaudible) to prove what's in the stipulation. . . . They still have to put on evidence to prove the allegation of abuse, neglect, dependency through DSS testimony or whatever type of evidence they have." The GAL confirmed this understanding of DSS's burden, telling the court "these stipulations do not shift the burden." As discussion continued, DSS argued to the court that the stipulations could—without more—be used to meet its burden.

At no point did Mother object to the stipulations or argue that they could not be used to establish her conduct; although her counsel did argue against a motion to admit *other* evidence during the discussion of the stipulations, the transcript reveals that Mother and her counsel made no mention of the stipulations whatsoever at any stage of the proceeding.

The trial court ultimately accepted the stipulations as "between three out of the four parties as to the facts in the stipulation[s]." It then asked DSS if it intended to put forth additional evidence. In response, DSS presented testimony from a DSS social worker regarding, among other things, the reports of sexual abuse, investigations of those reports, and Mother's refusal to cooperate with efforts by DSS to place Ellen in the household of any relative of Father. Mother testified on her own behalf and called her substance abuse counsellor as an additional witness.

After all the evidence on adjudication had been received, DSS argued that "the Department's shown by clear, cogent, convincing evidence, the child is depend[e]nt, neglected, and abused at the time the petition was filed. . . . [T]hese are just the same things that are in the stipulated facts[.]" The GAL argued next, expressly contending the stipulation was sufficient to establish proof of abuse, neglect, and dependency: "we agree with . . . [DSS's] assessment of the case and would ask that you accept the stipulation. Using those facts into evidence . . . the mother is essentially causing the child to be depend[e]nt[.]" Father's counsel followed, presenting an alternative argument that, "even if the stipulations we handed you at the beginning, if you were to not give them any weight today, Ms. Brown testified . . . . But without the stipulations, Judge, if you didn't feel comfortable with those, Ms. Brown's testified fully to that type of neglect and abuse that's occurred[.]"

The trial court asked Mother to respond to the arguments of the other parties. Her counsel conceded that Mother's allegations of sexual abuse were unsubstantiated and simply "ask[ed] that the Court acknowledge it's not abuse just because they went and sought medical help." Mother did not discuss the stipulations, address the argument that the stipulations alone established DSS's burden of proof, or contend that the stipulations were inadmissible or incompetent in any way. Indeed, Mother did not address the stipulations at all.

Immediately following Mother's closing argument, the trial court asked if there would be "[a]ny closing argument then for DSS since you're the—having the burden?" DSS responded by arguing that the social worker's testimony constituted clear, cogent, and convincing evidence of "the allegations in the petition . . . specifically, those outlined in the stipulation[s], and other than that, just to reiterate what everyone else says."

The trial court adjudicated Ellen abused, neglected, and dependent in open court, stating:

> All right, on the adjudication then, this order is based on the stipulated facts between [DSS], the [GAL], and [Father], the evidence presented by [DSS], and the evidence presented by [Mother], and the arguments of all four counsel.
>
> And going through the stipulated facts that make a finding that [Mother] did not stipulate to these facts [sic], however, after [Mother] presented evidence, the Court finds that with regard to all of the stipulated facts, the Court finds them to be fact. That [Mother's] evidence did not convince the Court that any of these stipulations were not in fact accurate.
>
> . . . .
>
> So the Court does adjudicate abuse, neglect, and dependency.

Immediately after the adjudication hearing, the trial court proceeded with a disposition hearing. DSS and the GAL presented additional testimonial evidence. At the conclusion of that hearing, the trial court found that juvenile court supervision of

the child was no longer necessary, and that the adjudication of the child as abused, neglected, and dependent constituted a change in circumstances warranting a modification of the custody order previously entered in the Civil Custody Case. The trial court instructed counsel for the parties prepare and submit proposed orders providing, among other things, that Father would have primary physical custody of Ellen and was required to allow Mother supervised visitation with Ellen both electronically and in person.

On 15 January 2019, the trial court entered a written order adjudicating Ellen abused, neglected, and dependent, "based upon the stipulated facts, the evidence presented, testimony of [Mother], and arguments of counsel[.]"

On 3 April 2019, the trial court entered a Chapter 7B-911 Disposition Order in the ongoing Civil Custody Case (the "7B-911 Order"), finding that a substantial change of circumstances existed which warranted modification of the prior custody order in the case. The 7B-911 Order awarded Mother and Father joint legal custody, awarded Father primary physical custody of Ellen, and ordered supervised in-person and electronic visitation by Mother. On 15 May 2019, the trial court entered a disposition order (the "Disposition Order") mirroring the terms of the 7B-911 Order while also finding there was no longer a need for State intervention on behalf of Ellen in a juvenile proceeding. Mother timely appealed.

II.  Analysis

Mother challenges the trial court's adjudication of Ellen as abused, neglected, and dependent, as well as the 7B-911 and Disposition Orders.  We address each of Mother's arguments in turn.

A.  Stipulations and Burden of Proof

Mother first contends that the stipulations are not admissible evidence. She further argues that the trial court, in erroneously considering the inadmissible stipulations as competent evidence of Mother's conduct, impermissibly placed a burden of production on Mother to refute the stipulations' contents. After careful review, we hold Mother has failed to preserve these issues for appellate review.

Mother did not object to the admission of the stipulations into evidence.  "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."  N.C. R. App. P. 10(a)(1) (2019).  "It is well settled that an error, even one of constitutional magnitude, that defendant does not bring to the trial court's attention is waived and will not be considered on appeal."  *State v. Bell*, 359 N.C. 1, 28, 603 S.E.2d 93, 112 (2004) (citation and internal quotation marks omitted).  This rule is equally applicable to evidentiary arguments in the context of abuse, neglect, and dependency proceedings.  *See In re H.D.F.*, 197 N.C. App. 480, 488-89,

677 S.E.2d 877, 883 (2009) (holding a mother could not challenge admissibility of evidence—or the findings in adjudication and disposition orders based on that evidence—when no objection to the evidence was raised at the hearing). Because Mother raised no objection to the introduction of the stipulations into evidence at the hearing, we hold this issue has not been preserved for review. *Id.*

By extension, Mother's argument that the trial court impermissibly considered the stipulations as "competent for adjudication" as to her and erroneously shifted the burden of production to "[Mother] to refute the incompetent stipulations" is also unpreserved.[2] The transcript reveals that Mother and her counsel were completely silent on the competency and use of the stipulations to show her alleged misconduct, even in the face of direct argument by DSS and the GAL that the stipulations were admissible and sufficient, standing alone, to prove Mother's abuse, neglect, and dependency by clear, cogent, and convincing evidence. Just as she failed to object to the admission of the stipulations, Mother did not object to the use of the stipulations as competent evidence establishing Mother's conduct. When a party fails to object to incompetent evidence, she cannot complain of its admission—or the trial court's reliance on it—on appeal: "*Evidence admitted without objection is properly considered by the court* and, on appeal, the question of its competency cannot be presented for

---

[2] We note that DSS, the GAL, and Father's attorney all contended that DSS bore the burden of proof notwithstanding the stipulations, and the trial court expressly placed the burden of proof on DSS prior to making its findings on adjudication when it asked "[a]ny closing argument then for DSS since you're the—having the burden?"

the first time." *Joyner v. Garrett*, 279 N.C. 226, 234, 182 S.E.2d 553, 559 (1971) (emphasis added) (citation omitted). *See also In re H.D.F.*, 197 N.C. App. at 488-89, 677 S.E.2d at 883 (holding that findings of fact were binding on appeal as supported by competent evidence—notwithstanding the mother's argument that the evidence in question was inadmissible—as the mother failed to object to the admissibility of the evidence at trial).

### B.  Evidence Supporting Adjudication

Mother next argues that the trial court's order adjudicating Ellen abused, neglected, and dependent was not supported by sufficient evidence and that the trial court did not make appropriate findings of fact.  We review a trial court's abuse, neglect, and dependency adjudication "to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re I.G.C.*, 373 N.C. 201, 203, 835 S.E.2d 432, 434 (2019) (citation and quotation omitted).  "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).  A trial judge sitting without a jury has the duty to consider and weigh the evidence, pass upon the weight and credibility of witness testimony, and draw reasonable inferences therefrom. *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968).  "A trial court's finding of fact that is supported by clear, cogent, and

convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019).

The purpose of the adjudication hearing is to determine the existence of the juvenile's conditions as alleged in the petition. *In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 14 (2006); N.C. Gen. Stat. § 7B-802 (2015). At this stage, the court's decisions must often be "predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).

Here, the trial court made the following findings of fact not challenged on appeal:

> 11. That [Mother] lacks housing of her own. The [Mother] lives with [Grandmother], who lives in her ex-husband's home.
>
> 12. That [Mother] has no employment or income.
>
> 13. That since [Ellen] was three months old, [Mother] and [Grandmother] have made several reports of sexual abuse against [Father] that were found to be unsubstantiated.
>
> 14. That while in the home and under [Mother's] care, [Grandmother] stated that she removed a foreign object from [Ellen's] vagina with mineral oil.
>
> 15. That while under [Mother's] care, [Grandmother] has taken pictures of the [Ellen's] vagina and attempted to give them to [DSS].

- 12 -

16. That [Mother] disrupted a potential kinship placement by contacting the potential placement despite [DSS's] recommendations to not contact the potential placement.

17. That [Mother] failed to bring [Ellen] to [DSS] as directed to meet with a potential temporary resource provider (the paternal aunt).

. . . .

19. That [Mother] stated that she would rather [Ellen] be placed in foster care than with a paternal relative.

20. That [Mother] and [Grandmother] have attempted to thwart any placement of [Ellen] with any paternal relative.

21. That [Mother], by raising unsubstantiated sexual abuse allegations, has caused [Ellen] to receive unnecessary and harmful medical care, including:

> a. Multiple invasive vaginal inspections by various medical providers (none of which showed any physical findings); and
>
> b. Two interviews by Child Forensic interviewers (both found no findings consistent with sexual abuse).

22. That [DSS] and law enforcement from two states have conducted investigations due to the [Mother's] allegations, all of which were unsubstantiated.

The trial court then made the following conclusions of law:

> 2. That [Ellen] is an abused juvenile pursuant to N.C. Gen. Stat. §7B-101 (1).
>
> 3. That [Ellen] is a neglected juvenile pursuant to N.C. Gen. Stat. §7B-101(15).

> 4. That [Ellen] is a dependent juvenile pursuant to
> N.C. Gen. Stat. §7B-101 (9).

We hold that the trial court's unchallenged findings of fact were sufficient to support the trial court's adjudication of Ellen as abused, neglected, and dependent.

### 1. Abuse

Mother argues that the evidence presented at the hearing did not support an adjudication of abuse based on the grounds DSS alleged in its petition. DSS alleged that Mother (1) "has used or allowed to be used upon the juvenile cruel or grossly inappropriate devices or procedures to modify behavior," one definition of abuse provided in N.C. Gen. Stat. § 7B-101(1)(c), and (2) "has created or allowed to be created serious emotional damage to the juvenile," another definition of abuse provided in N.C. Gen. Stat. § 7B-101(1)(e).

Our Court has held that the term "cruel or grossly inappropriate" typically refers to "extreme examples of discipline" beyond what a reasonable parent would employ. *See In re F.C.D.*, 244 N.C. App. 243, 249, 780 S.E.2d 214, 219 (2015). We need not address this issue, because we hold that the evidence supports an adjudication of abuse based on serious emotional damage.

An abused juvenile is defined, in relevant part, as one whose caretaker by act or omission allows serious emotional damage to the juvenile, evidenced by the juvenile's anxiety, depression, withdrawal, or aggressive behaviors. N.C. Gen. Stat.

§ 7B-101(1)(e) (2015). "[T]he nature of abuse, based upon its statutory definition, is the existence or serious risk of some nonaccidental harm inflicted or allowed by one's caretaker." *In re M.G.*, 363 N.C. 570, 574, 681 S.E.2d 290, 292 (2009).

Mother contends that the trial court "erred in adjudicating Ellen abused because neither the findings nor the evidence show Ellen having any physical harm, severe anxiety, depression, withdrawal or aggressive behavior." Mother specifically challenges findings of fact 10 and 18 as unsupported by the evidence. However, finding 18 is supported by the stipulations and, because the competency of the stipulations as evidence has not been preserved for review, that finding is deemed supported and binding on appeal. *In re H.D.F.*, 197 N.C. App. at 489, 677 S.E.2d at 883. She does not challenge findings of fact 11 through 17, or 19 through 22. As such, these findings are binding on appeal. *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. And, assuming, *arguendo*, that findings of fact 10 and 18 are unsupported by clear and convincing evidence, we hold that the trial court's remaining, unchallenged findings of fact support its abuse adjudication. *See In re J.R.*, 243 N.C. App. 309, 312, 778 S.E.2d 441, 443 (2015) ("[E]rroneous findings unnecessary to the determination do not constitute reversible error where an adjudication is supported by sufficient additional findings grounded in competent evidence." (citation and quotation omitted)).

The trial court found, in finding 21, that Ellen had been subjected to repeated unnecessary and harmful medical procedures, including invasive vaginal examinations and forensic interviews involving sexual content. The DSS social worker who filed the petition testified at the hearing that DSS had documented at least four allegations of sexual abuse for which Ellen received medical examinations, in addition to an informal examination by Grandmother to allegedly remove a "pebble" from Ellen's vagina. Each of these five examinations occurred before Ellen reached four years old. Law enforcement and child welfare agencies in two states found no signs of physical or sexual abuse but did report that Ellen displayed signs of emotional abuse. Mother and Grandmother nonetheless continued to make claims of sexual abuse, and to subject Ellen to additional invasive medical procedures. The trial court found that these procedures were harmful and inflicted as a result of Mother's actions. The trial court did not err in concluding that Ellen was an abused juvenile.

## 2. Neglect

Mother argues the trial court failed to make the necessary findings of fact that Ellen was experiencing, or at a substantial risk of experiencing, any kind of emotional, psychological, or behavioral impairment, and that the record evidence did not support such a finding. We disagree.

A neglected juvenile is defined, in relevant part, as one whose caretaker "does not provide proper care, supervision, or discipline; . . . or who is not provided necessary medical care; . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2015). The petition in this case alleged Ellen neglected on those grounds. Additionally, our Courts have required "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline" in order to adjudicate a juvenile neglected. *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (citation and quotation omitted). "Section 7B-101(15) affords the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." *In re N.G.*, 186 N.C. App. 1, 8–9, 650 S.E.2d 45, 50 (2007) (citation and quotations omitted).

Mother does not challenge the trial court's findings that Ellen has been subjected to numerous harmful and invasive medical procedures following repeated, unsubstantiated allegations of sexual abuse and that Mother repeatedly claimed that Ellen had been abused by others following determinations that each prior allegation was unsubstantiated. Finding 21 states that these procedures were already harmful to Ellen. The trial court's unchallenged findings establish that Mother's improper care of Ellen and repeated allegations of sexual abuse exposed Ellen to harmful

medical procedures, creating an environment injurious to Ellen's welfare. Although the trial court's unchallenged findings do not track the language used in N.C. Gen. Stat. § 7B-101(15) or expressly state Ellen has suffered some impairment, we hold they are sufficient to show the existence, or risk, of neglect when Ellen is in Mother's care. *See In re L.M.T.*, 367 N.C. 165, 168, 752 S.E.2d 453, 455 (2013) ("The trial court's written findings must address the statute's concerns, but need not quote its exact language."). The trial court did not err in adjudicating Ellen neglected.

### 3. Dependency

Mother's last challenge to the trial court's adjudication argues that it was improper to adjudicate Ellen dependent when Father was able to provide proper care and supervision at the time of the adjudication hearing. We disagree. Mother's argument misconstrues the law.

A juvenile may be adjudicated dependent where DSS proves "the juvenile's parent, guardian, or custodian [1] is unable to provide for the juvenile's care or supervision and [2] lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2015). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent[.]" *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007). Further, a child may not be adjudicated dependent when she has at least one parent capable of providing care or supervision. *In re V.B.*, 239 N.C. App. 340, 342, 768 S.E.2d 867, 868 (2015) (citation omitted).

Mother's argument fails because it requires consideration of Father's status at the time of the adjudication hearing, rather than the circumstances as they existed at the time the petition was filed. Section 7B-802 expressly provides "[t]he adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions *alleged in a petition*." N.C. Gen. Stat. § 7B-802 (emphasis added). Absent exceptional circumstances, the trial court may only look to the circumstances before the court at the time the petition was filed when considering whether a juvenile is dependent at the adjudication stage. *In re V.B.*, 239 N.C. App. at 344, 768 S.E.2d at 869 ("[P]ost-petition evidence generally is not admissible during an adjudicatory hearing for abuse, neglect, or dependency."); *see also In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 15 (2006) (holding that "post-petition evidence is admissible for consideration of the child's best interest in the dispositional hearing, but not an adjudication[.]").

Our Court has carved out exceptions to this general rule; for instance, when evidence is discovered after the filing of the petition that reflects a "fixed and ongoing circumstance" rather than a "discreet event or one-time occurrence," that evidence may be considered in a dependency adjudication. *In re V.B.*, 239 N.C. App. at 344, 768 S.E.2d at 870 (considering post-petition evidence of father's paternity in dependency adjudication because paternity was a "fixed and ongoing circumstance" relevant to whether the juvenile had a parent capable of supervision and care).

More recent case law has muddied the waters regarding what evidence a trial court may consider in an adjudication hearing. Although this case is factually distinguishable from those decisions, we take the opportunity here to survey the state of the law in hopes that it may be clarified by our Supreme Court or the legislature.

In *In re F.S.*, this Court reversed a dependency adjudication because there was no evidence that, at the time of the adjudication, the mother was unable to care for her child. *In re F.S.*, ___ N.C. App. ___, ___, 835 S.E.2d 465, 473 (2019). The Court explained that because the child had not been in the mother's custody for several months both before DSS filed a petition alleging dependency or during the four months pending the adjudication hearing, the trial court needed to consider evidence of the mother's ability to care for the child at the time of the adjudication hearing. *Id.*[3] This case is distinguishable from *In re F.S.* because Ellen was in Mother's custody until and at the time DSS filed its petition.

---

[3] The decision in *In re F.S.* also included the broad statement that "[t]he trial court must look at the situation before the court at the time of the hearing when considering whether a juvenile is dependent." *Id.* The Court cited a previous decision, *In re B.P.*, 257 N.C. App. 424, 809 S.E.2d 914 (2018), which quoted another case, *In re K.J.D.*, 203 N.C. App. 653, 661, 692 S.E.2d 437, 443 (2010), for the proposition. *B.P.* and *K.J.D.* discussed this language in the context of adjudications based on the risk of future neglect where the parents did not have custody of the children prior to the filing of the petitions. *See In re K.J.D.*, 203 N.C. App. at 660, 692 S.E.2d at 443 ("This case resembles those that deal with termination of parental rights based upon neglect in that the child has not lived in a home with a parent for a substantial period of time prior to the filing of the petition."); *In re B.P.*, 257 N.C. App. at 433-34, 809 S.E.2d at 919-20 (discussing *K.J.D.* but distinguishing it in part because the trial court did *not* find a substantial risk of harm if B.P. were returned to her mother's custody and such a finding could not be implied from the evidence). Here, Ellen was in Mother's custody at the time of the petition, and Mother's challenge to post-petition evidence in this case concerns the adjudication of Ellen as *dependent*, not as neglected based on any future risk should she be returned to Mother's custody.

When DSS filed the petition in this case, neither Mother nor Father was available to provide care or supervision to Ellen, and Mother disrupted DSS's attempts to temporarily place Ellen with relatives. Mother was not available because of her then-alleged emotional abuse of Ellen stemming from the unsubstantiated belief that Ellen was being sexually victimized. Father was not available because Mother and Grandmother had alleged Father sexually abused Ellen. The trial court adjudicated Ellen dependent after finding that, at the time the petition was filed, each parent was "unable to provide for [Ellen's] care or supervision and lack[ed] an appropriate alternative child care arrangement[.]" The trial court also found that, contrary to Mother's allegations, there was no evidence Father had sexually abused Ellen.

In addition to not fitting within the narrow exceptions to the rule that only pre-petition facts can be considered by the court in an adjudication hearing, this case is uniquely distinguishable because Mother was responsible for the allegations and DSS investigation which rendered Father unavailable to provide care or supervision to Ellen at the time of the petition.

## C. Disposition

In the disposition hearing, based upon additional, post-petition facts, the trial court found that it was in Ellen's best interests to reside with Father and awarded Father primary physical custody of Ellen. Mother challenges the trial court's 7B-911

and Disposition Orders modifying custody and transferring the case from juvenile court to the parents' civil custody action. "[D]ispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing." *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003). Findings based upon competent evidence are conclusive on appeal. *Id.* "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed for abuse of discretion." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019).

1. Termination and Transfer to Civil Custody Proceeding

In addition to the Disposition Order, the trial court entered its 7B-911 Order terminating the juvenile proceeding. Mother contends the 7B-911 Order is void because it did not contain a finding required to transfer jurisdiction to the civil case. *See* N.C. Gen. Stat. § 7B-911(c)(2)(a) (2015) (stating the trial court must make a finding that "[t]here is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding" to modify custody in a corresponding civil case). This deficiency in the 7B-911 Order is immaterial because the trial court's Disposition Order contained the requisite language to transfer the matter from juvenile court to a private civil proceeding. *In re A.S.*, 182 N.C. App. 139, 142, 641 S.E.2d 400, 402 (2007) ("The trial court may enter one order for placement in both

- 22 -

the juvenile file and the civil file as long as the order is sufficient to support termination of juvenile court jurisdiction and modification of custody.").

## 2. Change of Custody

Mother argues the trial court erred in entering a "7B-911 order and initial disposition order that changed custody of Ellen without considering the prior custody order and otherwise did not make sufficient findings to modify the underlying custody order." Mother contends that in order to determine whether there had been a change of circumstances since the prior custody order, entered on 18 July 2017, the trial court was required to consider that prior custody order.

We reject Mother's argument concerning the trial court's failure to literally examine the 18 July 2017 custody order. The only authority Mother cites as squarely supporting this proposition, *Woodring v. Woodring*, 227 N.C. App. 638, 645, 745 S.E.2d 13, 19 (2013),[4] concerns an entirely different scenario. *See Woodring* at 645-46, 745 S.E.2d at 19-20 (holding the trial court erred in modifying a temporary custody order entered in 2010 based on a substantial change in circumstances without regard to a more recent 2011 permanent custody order that had already

---

[4] Plaintiff also suggests *Kenney v. Kenney*, 15 N.C. App. 665, 190 S.E.2d 650 (1972), requires the trial court to directly examine the specific findings and terms of the earlier custody decree in order to modify it. Although we did compare the prior custody order and the appealed order modifying custody in *Kenney*, we did so to identify whether the facts and circumstances themselves had changed between the entry of the two orders. *Id.* at 668-69, 190 S.E.2d at 652-53. Here, the facts giving rise to the modification of custody in the Disposition and 7B-911 Orders occurred after the 18 July 2017 custody order and remained unsettled at the time of the trial court's most recent 5 December 2017 temporary custody order.

litigated those purportedly changed circumstances).[5]  *Woodring* itself states that, "when evaluating whether there has been a substantial change in circumstances, courts may only consider *events which occurred after the entry of the previous order*, unless the events were previously undisclosed to the court." *Id.* at 645, 745 S.E.2d at 20 (citations omitted) (emphasis added).  We based this statement on the underlying rationale for showing a substantial change in circumstances: " 'The reason behind the often stated requirement . . . is to prevent *relitigation* of conduct and circumstances that antedate the prior custody order.' "  *Id.* at 645, 745 S.E.2d at 19 (quoting *Newsome v. Newsome*, 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979)).

The events relied upon by the trial court in identifying a substantial change in circumstances—specifically, Mother's continuing allegations of abuse, the investigation and evaluation of those allegations, the determination that those allegations and examinations were unfounded and harmful to Ellen, and the adjudication of Ellen as abused, neglected, and dependent—occurred after the 18 July 2017 order pointed to by Mother and had not been resolved at the time of the most

---

[5] Here, the trial court considered the most recent temporary custody order—entered on 5 December 2017 and directing DSS to investigate Mother's allegations of abuse against Father—in determining a substantial change in circumstances existed.  Although the December 2017 order stated that an earlier temporary custody order, entered on 18 July 2017, "shall remain in full force and effect[,]" it also made clear that a full investigation into Mother's allegations and their effect on Ellen had not been completed as of the previous  order.  This is unlike *Woodring*, where the most recent permanent order had not been considered in determining whether a change in circumstances required for modification under N.C. Gen. Stat. § 50-13.7 existed and the trial court relied on events that were previously litigated in that most recent permanent order.  227 N.C. App. at 645-46, 745 S.E.2d at 19-20.

recent 5 December 2017 order. Mother does not contend that those events were previously litigated in the 18 July 2017 order. As a result, we reject this argument that a literal examination of the earlier 2017 order was necessary to find a change of circumstances here.

We also disagree with Mother's contention that the trial court's findings are inadequate to support the conclusion of a substantial change in circumstances. In its 7B-911 Order, the trial court found that Ellen "was adjudicated abused, neglected and dependent *due to actions of the defendant* as detailed in the aforesaid Adjudication Order." That Adjudication Order, in turn, recounted those actions, namely, her submission of Ellen to numerous unnecessary and harmful medical procedures based on continuing allegations of sexual abuse by Father that were ultimately determined to be unsubstantiated. In the Disposition Order, the trial court found that Mother continuously levelled unfounded allegations of sexual abuse by Father, and that those allegations led to a determination that Ellen was abused, neglected, and dependent. We hold that these findings were adequate to support a conclusion of law that a substantial change in circumstances had occurred.

Mother also argues that the trial court "erred in concluding a change in circumstances existed warranting modification of a custody order without affirmatively stating the standard of proof." Mother correctly states that, where a standard of proof is necessary, "there is clear case law that holds the order of the trial

court must affirmatively state the standard of proof utilized." *In re E.N.S.*, 164 N.C. App. 146, 152, 595 S.E.2d 167, 171 (2004). However, Mother cites to no case law defining a standard of proof required in dispositional orders. Rather, as our Supreme Court has explained, no party "bears the burden of proof in [dispositional] hearings, and the trial court's findings of fact need only be supported by sufficient competent evidence." *In re L.M.T.*, 367 N.C. 165, 180, 752 S.E.2d 453, 462 (2013). It is only essential that the court receive sufficient evidence to determine what is in the best interests of the child. *Id.* (citation omitted). The trial court's determination of Ellen's best interests "based upon evidence and the records" was sufficient.

### 3. Visitation

Lastly, Mother argues the trial court "erred in effectively denying [Mother] appropriate visitation and in making no findings as to [Mother]'s obligations or ability to pay for supervised visitation." We agree.

N.C. Gen. Stat. § 7B-905.1 provides, in pertinent part:

> (a) An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety. The court may specify in the order conditions under which visitation may be suspended.
>
> . . . .
>
> (c) If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any

order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.

N.C. Gen. Stat. § 7B-905.1(a), (c) (2015).

The Disposition Order in the present case ordered the following:

3. That until further order of the Court regarding the [Mother's] visitation, the [Mother] shall have the following supervised visitation:

a. Facetime twice a week, Sundays from 2-·3 pm and Wednesdays from 7-8 pm;

b. Christmas day Facetime from 2-3 pm;

c. If [Mother] travels to the [Father's] hometown, Ackworth, Cobb County, Georgia, prior to further hearing on visitation, she can have supervised visitation for 2 hours on a Saturday and 2 hours on a Sunday.

4. That each of the parties need to come up with a supervision plan for supervised visits for the [Mother].

5. That Charlotte, North Carolina is the half-way point between the parties, and the parties need to explore visitation centers in the City of Charlotte, to include hours and costs, possibly at the Mecklenburg County Supervised Visitation Center.

First, the visitation provisions appropriately (1) provide for physical and electronic visitation, (2) set out the length and frequency of visitation, and (3) direct whether the visitation should be supervised, but they "fail[] to provide any direction

as to the frequency or length of [Mother's] visits in the event that she does not [go to Georgia]." *In re J.D.M.-J.*, 260 N.C. App. 56, 69, 817 S.E.2d 755, 757 (2018).

Second, in setting out instructions for future visitation in a supervised visitation center, the trial court failed to make findings as to who would pay for the resulting costs of visitation and the chosen party's ability to pay. In *In re J.C.*, 368 N.C. 89, 772 S.E.2d 465 (2015), the trial court specifically ordered that visitation be supervised and that the mother pay for supervision expenses. *Id.* at 89, 772 S.E.2d at 465. Our Supreme Court ordered that the visitation provisions be vacated and the matter remanded for further findings because "[t]he district court made no findings whether respondent mother was able to pay for supervised visitation once ordered." *Id.* In doing so, the Supreme Court held that such findings were necessary "to determine if the trial court abused its discretion" and "to support meaningful appellate review." *Id.*

Our Court then expanded on *J.C.* in *In re Y.I.*, 262 N.C. App. 575, 582, 822 S.E.2d 501, 506 (2018). In *Y.I.*, the trial court ordered supervised visitation but did not order a specific party to pay for supervision and did not make any assessment of the mother's ability to pay. *Id.* We found error and reversed because it appeared likely that the mother would be required to pay for visitation, as DSS was relieved of authority in the case, and the trial court failed to determine whether the mother could pay for supervised visitation. *Id.* Our Court has since squarely relied on *Y.I.* and

reversed without further discussion where "the trial court made no findings as to the costs associated with supervised visitation, who would bear the responsibility of paying such costs, or [the visiting party]'s ability to pay the costs." *In re J.T.S.*, ___ N.C. App. ___, ___, 834 S.E.2d 637, 646 (2019).

In the present case, the trial court ordered that Mother only gets visitation (1) if she travels from Onslow County to Georgia or (2) if visitation is supervised in Charlotte. Having determined that it is in the best interests of Ellen that Mother have in-person visitation with her child, the trial court was required to determine whether any inability to pay for visitation on Mother's part would prevent the best interests of Ellen from being met. Without such findings, we cannot determine whether the trial court abused its discretion in setting the conditions for Mother's visitation with Ellen. *See In re Y.I.*, 262 N.C. App. at 582, 822 S.E.2d at 505 ("[T]he trial court's order is not specific enough to allow this Court to determine whether the trial court abused its discretion in setting the conditions of visitation." (citing *In re J.C.*, 368 N.C. at 89, 772 S.E.2d at 465)). Therefore, we vacate and remand the portion of the dispositional order setting out Mother's visitation for additional findings regarding Mother's ability to pay for costs associated with visitation.

### III. Conclusion

We hold that the trial court did not commit error in adjudicating Ellen abused, neglected, and dependent and did not err in its transfer of proceedings from Chapter

7B to Chapter 50 under Section 7B-911. However, we hold that the trial court failed to make necessary findings as to Mother's ability to pay for visitation as ordered in the 7B-911 and Disposition Orders. As a result, we vacate the visitation provisions of those orders and remand for further findings on Mother's ability to pay for visitation. The trial court may elect to take further evidence on the question in its discretion.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

Judge ARROWOOD concurs.

Judge MURPHY concurs by separate opinion.

MURPHY, Judge, concurring.

I concur with the Majority that Mother's arguments regarding the "stipulation" entered into by Father, DSS, and the GAL, but not Mother, were not properly preserved for our review. *Supra* at 9. However, I write separately to reject the GAL's and DSS's arguments that, were the issues related to the "stipulation" preserved, the trial court's use of the "stipulation" against Mother was appropriate and did not impermissibly shift the burden to Mother.

DSS and the GAL would urge us to approve of the trial court's reliance on the "stipulation," a document that discusses the alleged actions of a party to the litigation who did not assent to the "stipulation." The trial court improperly relied on the document during the adjudication stage of the proceeding despite Mother not being a party to it:

> All right, on the adjudication then, *this order is based on the stipulated facts between [DSS], the [GAL], and [Father]*, the evidence presented by [DSS], and the evidence presented by [Mother], and the arguments of all four counsel.

(Emphasis added). The trial court went on to improperly place the burden of disproving the "stipulation" on Mother:

> And going through the stipulated facts that make a finding that the [Mother] did not stipulate to these facts, however, after the mother presented evidence, the Court finds that with regard to all of the stipulated facts, the Court finds them to be fact. That *the mother's evidence did not convince the Court that any of these stipulations were not in fact accurate.*

(Emphasis added). Ultimately, the trial court "adjudicate[d the child to be] abuse[d], neglect[ed], and dependen[t]."

There are two errors in the trial court's actions regarding the "stipulation"—first, the "stipulation" was not properly considered as evidence against Mother given that she did not stipulate to it; and, second, the trial court placed a burden on Mother to disprove the allegations of her adversaries.

To adjudicate a child as abused, neglected, and dependent the trial court must "find[] from the evidence, *including stipulations by a party*, that the allegations in the petition have been proven by clear and convincing evidence[.]" N.C. G. S. § 7B-807(a) (2019) (emphasis added). Despite the contemplation of "stipulations by a party" in the statute, our caselaw has made clear that stipulations do not extend beyond what was agreed to by those stipulating. *See Rickert v. Rickert*, 282 N.C. 373, 380, 193 S.E.2d 79, 83 (1972). Stipulations do not extend beyond what was agreed to, and do not extend to parties who did not agree to them either. The GAL suggests that a party who did not agree to a stipulation may be bound by the content of the stipulation. This is not the law, this has never been the law, and this should never be the law in an adversarial system.[6]

---

[6] "Where facts are stipulated, they are deemed established as fully as if determined by the verdict of a jury. A stipulation is a judicial admission. As such, [i]t is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact." *Moore v. Humphrey*, 247 N.C. 423, 430, 101 S.E.2d 460, 466-467 (1958) (internal citations and quotation marks omitted). Similar to

*Murphy, J., concurring*

Our Supreme Court has discussed the rules regarding stipulations and how those rules apply when the stipulation is used beyond its intended scope to also include attorney fees, as follows:

> It has been said in North Carolina that courts look with favor on stipulations, because they tend to simplify, shorten, or settle litigation as well as saving cost to the parties. . . .
>
> In *Lumber Co. v. Lumber Co.*, . . . this Court considered judicial admissions, and Walker, J., speaking for the Court, stated: "Such agreements and admissions are of frequent occurrence and of great value, *as they dispense with proof and save time in the trial of causes.* The courts recognize and enforce them as substitutes for legal proof, and there is no good reason why they should not. . . . While this is so, the court will not extend the operation of the agreement beyond the limits set by the parties or by the law."
>
> It has been the policy of this Court to encourage stipulations and to restrict their effect to the extent manifested by the parties in their agreement. . . . In determining the extent of the stipulation we look to the circumstances under which it was signed and the intent of the parties as expressed by the agreement. Similarly, stipulations will receive a reasonable construction with a

our caselaw, Black's Law Dictionary's second definition of stipulation is "[a] voluntary agreement between opposing parties concerning some relevant point; esp. an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding [for example,] the plaintiff and defendant entered into a stipulation on the issue of liability[]. . . . A stipulation relating to a pending judicial proceeding, made by a party to the proceeding or the party's attorney, is binding without consideration." *Stipulation*, Black's Law Dictionary (11th ed. 2019). Its third definition is "*Roman law.* A formal contract by which a promisor (and only the promisor) became bound by oral question and answer. []By the third century A.D., stipulations were always evidenced in writing." *Stipulation*, Black's Law Dictionary (11th ed. 2019). In fact, even the first edition of Black's Law Dictionary states "[t]he name 'stipulation' is familiarly given to any agreement made by the attorneys engaged on opposite sides of a cause, (especially if in writing,) regulating any matter incidental to the proceedings or trial, which falls within their jurisdiction. Such, for instance, are agreements to extend the time for pleading, to take depositions, to waive objections, to admit certain facts, to continue the cause." *Stipulation*, Black's Law Dictionary (1st ed. 1891) (emphasis added).

view to effecting the intent of the parties; but in seeking the intention of the parties, the language used will not be so construed as to give the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished, . . .

Judge Martin's order enumerated concisely each of defendant's obligations, all of which related to subsistence and child custody. Further, the fact that the stipulation did not include an award of counsel fees is reflected in the following portion of Judge Martin's order: "The court expressly refrains from ruling on the question of attorneys' fees for plaintiff's attorneys at this time, and that said motion for attorneys' fees may be ruled upon at the final determination of this action."

Recognition that allowance of counsel fees had not been considered by either judge was again clearly shown by paragraph 15 of the consent order awarding permanent alimony and child custody signed by Judge Allen on 25 July 1971, . . .

*Rickert*, 282 N.C. at 379-381, 193 S.E.2d at 83-84 (internal citations and marks omitted) (emphasis added).

The language above recognized the longstanding application of the limits of stipulations to only what is *agreed* upon. Our Supreme Court in *Rickert* goes on to state:

Manifestly, it was not the intent of the parties or the understanding of the respective trial judges that allowance of counsel fees be affected by defendant's stipulation. We cannot by construction broaden or extend this stipulation to encompass allowance of counsel fees. We therefore hold that defendant's stipulation, standing alone, did not support the award of counsel fees.

> The trial judge could not have, without more, awarded counsel fees even if we concede defendant's stipulation included admissions of all requirements of [N.C.]G.S. [§] 50-16.3 as relating to subsistence, and that the stipulation met the statutory prerequisite that plaintiff was entitled to the principal relief demanded.

*Id*. at 381,193 S.E.2d at 84. Stipulations are not evidence of anything against a party beyond what is stipulated to by that party. As our Supreme Court stated, even if a stipulation could fully establish a claim on its own, it still would not entitle a party to relief on that claim when the stipulation was not intended to extend to the claim. This further demonstrates that a stipulation is not evidence to the extent there is not agreement to its terms. *See also Estate of Carlsen v. Carlsen*, 165 N.C. App. 674, 678, 599 S.E.2d 581, 584 (2004) ("A stipulation need not follow any particular form, but its terms must be sufficiently definite and certain as to form a basis for judicial decision, and it is essential that the parties or those representing them assent to the stipulation."). If a stipulation is not evidence beyond the extent of the parties agreed-upon terms, it cannot be evidence against a party who does not agree to it. If this were not true, it would make the requirement "that the parties or those representing them assent to the stipulation" pointless, as in any action with three or more parties, two parties could enter a stipulation only about the other party, as happened here, that would be included in evidence against all other parties despite the other parties not agreeing to the stipulation. *Id*. Using the "stipulation" here as evidence against

5

Mother despite her not being a party to it was improper, and the trial court erred in considering the "stipulation" as evidence against her.

The error here, if it was preserved, would be reversable due to the trial court's apparent reliance on the "stipulation" to shift the burden of proof to Mother when it came to the facts in the "stipulation." The trial court stated:

> And going through the stipulated facts that make a finding that the mother did not stipulate to these facts, however, after the mother presented evidence, the Court finds that with regard to all of the stipulated facts, the Court finds them to be fact. That the *mother's evidence did not convince the [trial c]ourt that any of these stipulations were not in fact accurate.*

(Emphasis added). The plain meaning of this statement shows the trial court placed a burden of disproving the content of the stipulation on Mother.

DSS suggests that the language above instead reflects the trial court having weighed and considered conflicting evidence. The language itself is that Mother had to "convince the [trial c]ourt" that the "[contents of the] stipulation[] were not in fact accurate." Placing a burden on Mother to disprove the facts in the "stipulation" DSS provided to the trial court as evidence that the child was neglected, dependent, and abused is the same as placing a burden on Mother to disprove DSS's evidence that the child was neglected, dependent, and abused. This impermissibly shifted the burden of proof to Mother to show her child was not neglected, dependent, or abused. Placing this burden of proof on Mother was erroneous, as "[t]he burden of proof in an adjudicatory hearing lies with the petitioner to show by clear and convincing evidence

6

that a minor child has been neglected[, abused, or is dependent]." *In re E.P.*, 183 N.C. App. 301, 306, 645 S.E.2d 772, 775 (2007).

Our Supreme Court has held:

> "The rule as to the burden of proof (the burden of the issue) constitutes a substantial right, for upon it many cases are made to turn, and its erroneous placing is regarded as reversible error."
>
> . . .
>
> When [a] judge has *expressly* placed the burden of proof upon the wrong party, and conflicting inferences may be drawn from the evidence, it is impossible for an appellate court to know whether the erroneous allocation of the burden dictated his findings of fact. [Such a] proceeding, therefore, must be remanded to the Superior Court for a rehearing.

*Joyner v. Garrett*, 279 N.C. 226, 236-237, 182 S.E.2d 553, 560-561 (1971) (quoting *Williams v. Insurance Company*, 212 N.C. 516, 518, 193 S.E. 728, 730 (1937)). According to the rule set out in *Joyner*, if this issue was preserved, we would be required to vacate the trial court's order and remand.

Here, as established above, the trial court expressly placed the burden of proof on Mother to disprove the evidence presented by DSS, while DSS should have had the burden of proof. Additionally, conflicting inferences may be drawn from the evidence here, as Mother testified to the allegedly legitimate reasons for her concerns of sexual abuse. The trial court's order was based on the conflicting evidence, including "the stipulated facts," that supported the findings of fact relied on to adjudicate the child as dependent, neglected, and abused. As a result, "it is

impossible for an appellate court to know whether the erroneous allocation of the burden dictated [the trial court's] findings of fact" where the trial court "expressly placed the burden of proof upon the wrong party, and conflicting inferences may be drawn from the evidence." *Id.* According to *Joyner*, if this issue was preserved, we would be required to vacate the order and remand for determination of this issue without considering the "stipulation" against a stranger to the document. *Id.*

Were the trial court able to consider this stipulation against Mother in the manner the trail court did, it would allow a filing entitled "stipulation" to be considered as evidence of a claim, even if the party it is used against does not agree to it, unless she is able to disprove the contents of the "stipulation." In other words, for a party to not be bound by a "stipulation" she never agreed to, she must disprove its contents. Such a rule greatly expands how stipulations may be used by parties as the law otherwise requires stipulations to be limited to the agreeing parties' intentions and to the agreeing parties. Such a rule would turn our adversarial system on its head. The GAL's and DSS's positions before the trial court and on appeal as to the trial court's use of the "stipulation" are incorrect and have no place in our adversarial system.